(59 Misc. Rep. 70.)

LOEWY v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Supreme Court, Trial Term, New York County. April, 1908.)

1. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—SALARIES.
   Laws 1897, p. 394, c. 378, § 1091, as amended by Laws 1900, p. 1607, c. 751, § 4, provides that the board of education of the city of New York shall have power to adopt by-laws fixing the salaries of teachers, and that they shall establish a uniform schedule providing for an equal annual increase of salary, and that no salary shall be reduced by the act. *Held* to require salaries existing at the time of its passage, when above the minimum required by the appropriate schedule, to be continued until the end of the school year, when the teacher should be placed under the proper schedule, where it did not require a reduction of his salary.

2. SAME.
   Where a teacher was receiving by contract a salary of $960 per annum at the time of the passage of Laws 1900, p. 1607, c. 751, § 4, amending Laws 1897, p. 394, c. 378, § 1091, relating to salaries of teachers of schools in the city of New York, and providing for continuance of a teacher at the same salary to the end of the school year, when he was to be placed on the schedule adopted by the board of education, such teacher was entitled to such salary for the remainder of the school year, when he was entitled to be increased in accordance with the schedule applicable to the class of teachers to which he belonged.

Action by George J. Loewy against the board of education of the city of New York. Judgment for defendant.

John E. O'Brien, for plaintiff.
Francis K. Pendleton, Corp. Counsel, for defendant.

GOFF, J.   At the commencement of the school year, on the 1st of October, 1899, plaintiff was appointed teacher of shop work in the public schools at an annual salary of $960.   On the 3d of May, 1900, there went into effect an amendment to the Greater New York charter (Laws 1897, p: 394, c. 378, § 1091) by Laws 1900, p. 1607, c. 751, § 4, which, among other things, provided that:

"The board of education shall have power to adopt by-laws fixing the salaries of * * * all members of the supervising and teaching staff. * * * Such by-laws shall establish a uniform schedule of salaries for the supervising and teaching staff throughout all boroughs, which schedule shall provide for an equal annual increment of salary of such an amount, that * * * no male teacher in said elementary schools shall receive less than nine hundred dollars per annum nor shall the annual increment for any male teacher therein be less than one hundred and five dollars. * * * No salary now paid to any member of the supervising and the teaching staff of any of the public schools in the city of New York shall be reduced by the operation of this section, and the aforesaid equal annual increment for each class or grade of the supervising and the teaching staff of said public schools shall be uniform throughout each class or grade, and each of said persons shall at once receive all the emoluments in accordance with the above schedule of minimum salaries to which said person is entitled by reason of merit, of experience and of the grade of class taught."

On the same day, and in pursuance of the act, the board of education adopted a schedule, known as "Schedule VI," by which a minimum salary of $900 for the first year was fixed as the salary of teachers of plaintiff's grade, with an annual increase of $105 for a period of 12 years, when a maximum fixed by law would be reached.   At the time this schedule went into effect plaintiff was, under his original appointment, receiving $960 per year, and he continued to receive that sum, in monthly payments, for the balance of the school year, until the 1st of October, 1900, when under the schedule he received salary at the rate of $1,005 per year, and for each subsequent year received the prescribed increase of $105.   No question is raised as to the efficiency of the plaintiff as a teacher, nor as to his having been appropriately graded or classified, nor as to the propriety or validity of the schedule.   The only question to be determined is, what salary was plaintiff entitled to receive, under the schedule, when it went into effect on the 3d of May, 1900?   He contends that from that date he was entitled to receive a minimum salary, at the rate of $1,005 per year, until the 1st of October next ensuing, when, at the commencement of the new school year, he became entitled to receive the annual increase of $105 for each recurring year.   The defendant contends that he was only entitled to receive for the first year the minimum rate of $900, and thereafter the annual increase of $105; and the fact that he actually received $960 for the first year was because he had been employed at that figure, and the act prohibited any reduction.

While the act cited is very prolific in language, yet in vain may it be searched for any express terms or provisions which are applicable to or control the precise question involved.   Recourse must be had, therefore, to the act which was amended, to the object and pur-

pose of the amendment, and to the reason of the thing, in order that
the true intent and meaning of the statute may be ascertained. When
the different boroughs which now constitute the city of New York
were consolidated into one municipality, a scheme of government for
the department of public education was devised. Such a scheme was
rendered difficult of accomplishment, because of the different systems
existing in the various municipalities and school districts within the
territorial limits of the new city. It is not necessary to refer to the
statutes or by-laws then in existence, beyond the mere statement that
out of the confusion there was sought to be shaped something like or-
der, and how far this was successful may be measured from the pro-
visions which empowered the different school boards to fix the salaries
of the teaching staff, although:

"Said salaries need not be uniform throughout all the several boroughs,
nor in any two of them, nor throughout any one borough." Charter, § 1091.

Thus large power was given to the individual school boards to
adopt such salaries as they deemed proper, provided only that:

"Such salaries shall be regulated by merit, by the grade of class taught,
by the length of service, or by the experience in teaching of .the incumbent in
charge, or by such a combination of these considerations as the school board
may deem proper." Section 1091.

It was to be expected that, with such power in the hands of the dif-
ferent boards, different standards of compensation should be adopted,
thus giving rise to much dissatisfaction among the teachers, not only
on account of the unfairness, but also on account of the insufficiency.
This defect was in part remedied, in 1899, by an act (Laws 1899, p.
883, c. 417) which amended section 1091 of the charter by adding to
it certain restrictions as to the minimum salaries which might be paid
to teachers and principals. By this amendment no regular teacher
could be paid less than $600 per annum. Although some relief was
given by this act, it was but slight; and the continued dissatisfaction
with existing conditions was expressed in the enactment of chapter
751 of the Laws of 1900, under which the present action has been
brought. It is entitled:

"An act to amend chapter 378 of the Laws of 1897 * * * relative to the
department of education, for the purpose of establishing a uniform salary
schedule and providing funds therefor."

The fourth section is an amendment of section 1091 of the Greater
New York charter. That section gives to the central board of educa-
tion, instead of to the individual school boards, the power to fix sal-
aries, but greatly limits that authority by providing for a uniform
schedule of salaries, and it further directs, with much minuteness,
what shall be the minimum salaries and increments for the various
grades of the teaching and supervising staff. The purpose of this
act was to vest the power of fixing salaries within clearly defined lim-
its, according to a uniform schedule, in the central or governing board;
and the reason of it was, not only to pay a just and uniform compen-
sation to the teachers, but to remove the inequalities, the incongruities,
and the capriciousness of the old system. In construing the act the
reasons for its creation must be borne in mind; but such reasons may

not be allowed to limit the discretion formerly given to the boards, except in so far as the act specifically states. If, as in the present case, an amendment is lacking in some particular or is capable of more than one construction, it is permitted to look, not only to the provisions of the original act, but the court may avail itself of any legitimate aids for the purpose of ascertaining its true meaning. 2 Lewis' Suth. Stat. Constr. (2d Ed.) §§ 450, 456.

When the outlying districts were annexed to the city of New York by the Greater New York charter, section 1086, entitled "Continuation of Yearly Contracts with Teachers in Territory Consolidated," directed that:

"All yearly school contracts by and between the local school authorities of any school district whose territory is so annexed and consolidated by this act and the teachers in such district as such yearly contracts exist at the time when this act shall take effect, shall in all respects continue until the expiration of the yearly term named therein and shall be so continued by the board of education of the city of New York, through the proper school board."

This section applied to the contracts existing at the time between teachers and the local school authorities, and indicated the procedure which the new school authorities were directed to follow in order that the conditions then existing might best be brought under the new régime. Such a provision is lacking in the act of 1900; but, in view of such omission, it is permitted to look to this section of the charter, which is still in force and unamended. From it we can infer what must still be the intention of the Legislature under such circumstances. It is not necessary that conditions then and now be identical. It is sufficient if they be so similar that a fair inference may be drawn from the earlier act as to an intention which is unexpressed in the latter amendment. Construed in this way, it becomes evident that the spirit of the act requires that existing salaries, when above the minimum required by the appropriate schedule, should be continued until the end of such school year, and that the individual be then placed under the proper schedule, provided that his salary be not reduced in so doing. From this reasoning it must follow that the annual increment of $105 may not be claimed as of right until the individual has been placed under one of the schedule grades; for it is clear that on any other theory, if the salary received up to May 3, 1900, was greater than the minimum for the year in accordance with the schedule, defendant would be forced to classify such teacher at a rate of salary much greater than that required by the act, and in such a case there would be, in effect, a direction to the board of education to increase the minimum salary allowed by the act.

If plaintiff's contention be sound and his interpretation of the act be adopted, it would destroy the very object of the legislation—the uniformity of salaries. During his second year of service he would be receiving the salary paid to those of the third year, and would in such manner continue throughout his term of service. Were there many such cases, uniformity would be but a name, and the object of the statute defeated. It was the intention of the Legislature that the increase should, under the schedule, be automatic and take place at the end of each year. According to plaintiff's contention this increase

would occur on May 3, 1900, irrespective of how long his term of service had been, prior to the enactment. Had he been appointed in April, he would still claim a year's increase in May and another year's increase the following October. But for the clause forbidding reduction, his salary would, for the first year, have been fixed at the minimum, $900. Can it be held that, because his salary could not be reduced, he in consequence became entitled to an increase? If the law says salary cannot be reduced, can the prohibitive words be perverted into meaning that the salary must be increased? And to this point plaintiff's reasoning inevitably leads; for it involves the unavoidable conclusion that, because his first year's salary was protected from reduction, he thereby should receive in one year the annual increments allowed for two. I do not believe the Legislature ever intended such a result, and certainly it should not receive judicial sanction.

Reliance is placed by plaintiff upon the case of Moore v. Board of Education, 121 App. Div. 862, 106 N. Y. Supp. 983, recently decided by the Appellate Division. It has no application. The question passed upon there was the plaintiff's right to a certain grade. Here there is no such question.

Defendant's contention that the plaintiff is estopped from recovery because of having receipted in full for his salary, and that he is barred by the statute of limitations, cannot be upheld. These questions might become important, if bearing upon contractual relations; but where rights are fixed by statute they may not prevail.

Judgment for defendant is awarded.