In the Matter of the Application of RENA ROCKWELL, Respondent, for a Peremptory Order of Mandamus against THE BOARD OF EDUCATION OF THE CITY OF ELMIRA, N. Y., Appellant.

Third Department, November 20, 1925.

Schools — teachers — salaries — Education Law, § 569 (as added by Laws of 1924, chap. 614), effective September 1, 1924, relating to discrimination in salaries based on sex, is not applicable to salaries fixed prior to September 1, 1924.

The provisions of section 569 of the Education Law (as added by Laws of 1924, chap. 614), which section became effective September 1, 1924, and prohibits discrimination in the determination of the amount to be paid or the payments to be made to persons employed as teachers in public schools based on sex, do not apply to salaries fixed prior to September 1, 1924.

Accordingly, the petitioner is not entitled to a peremptory order of mandamus to compel the board of education of the city of Elmira to pay her the same salary as paid to a male teacher, since it appears that she had qualified for permanent tenure of office and that in her case the determination as to her salary was made in May, 1924.

McCANN, J., dissents, with memorandum.

APPEAL by the defendant, The Board of Education of the City of Elmira, N. Y., from a peremptory mandamus order of the Supreme Court, made at the Chemung Special Term and entered in the office of the clerk of the county of Chemung on the 29th day of June,

1925, directing the defendant to pay to the petitioner an amount equal to the salary of a male teacher performing the same work.

*John J. Crowley, Corporation Counsel,* for the appellant.

*David N. Heller,* for the respondent.

HINMAN, J.:

The mandamus order was granted upon the petition of Rena Rockwell, a female teacher in the Elmira Free Academy, the basis of the application being that the board of education of Elmira violated section 569 of the Education Law (as added by Laws of 1924, chap. 614) in fixing and paying her a salary less than that of a certain male teacher in said academy teaching the same subjects and performing substantially the same duties as the petitioner. The order required the board of education to pay her an amount equal to the amount paid to such male teacher for the school year of 1924–1925. The controversy hinges upon the construction to be given to said section 569 of the Education Law, which is known as the Equal Pay Law and prohibits discrimination based on sex.

Section 569 of the Education Law (as added by Laws of 1924, chap. 614) became a law May 3, 1924, but the Legislature provided that it should take effect September 1, 1924. It provided as follows:

" § 569.. Discriminations based on sex prohibited. On and after the taking effect of this act there shall be no discrimination in the determination of the amount to be paid or the payments to be made to persons employed as teachers in the public schools in any city, union free or common school district in this State based on sex. All contracts hereafter made for the employment of public school teachers and all schedules of salaries and salary increments adopted by boards of education, as provided in this chapter, shall not discriminate between the salaries and salary increments of public school teachers to be paid under such contracts and schedules because of the sex of said public school teachers, notwithstanding the provisions of any general or special act inconsistent herewith."

It is agreed that in May, 1924, the board of education of the city of Elmira, following its annual custom, fixed the salaries of the school teachers of that city for the succeeding year. Respondent's salary and that of the male teacher in question were then determined and both of them were notified in writing. Her salary was fixed at $2,000 and his at $2,100. It is the custom of said board of education to make salary payments to teachers at the end of each month beginning in September and continuing for ten months, upon presentation of bills to said board by the teachers. After Septem-

ber 1, 1924, the date when the said Equal Pay Law went into effect, the respondent demanded of said board that her pay be made equal to that of said male teacher, which was refused by said board. The decision of the Special Term, requiring the application of the statute to her case, was based upon an interpretation that notwithstanding there was a determination of the amount to be paid respondent made long before September 1, 1924, it was the intention of the Legislature that on and after September 1, 1924, " there shall be no discrimination in   *   *   *   the payments to be made " to teachers based on sex.   (125 Misc. 136.)

The argument of the appellant is that the Legislature did not intend to change contracts or determinations as to salaries which had been made prior to September 1, 1924, the effective date of the Equal Pay Law.   This argument appears to us to be the sounder view.   The Legislature had in mind the fact that as to teachers who had permanent tenure during good behavior and efficient and competent service, under section 872 of the Education Law (as added by Laws of 1917, chap. 786), an annual determination as to salary was made and that as to new teachers and those who had not qualified for permanent tenure an annual contract of employment was required.   (Education Law, § 561, as amd. by Laws of 1910, chap. 442.)   In order that the schools should be ready to function on the first Tuesday in September, the Legislature knew that these determinations as to salary and these contracts of employment were made and entered into prior to September first in each year.   The respondent was one of those who had qualified for permanent tenure and in her case the determination as to her salary had been made in May, 1924.   Assuming, as respondent urges, that the " contracts hereafter made," mentioned in the 2d sentence of the Education Law, section 569, apply only to such contracts as are made with new teachers or teachers who have not qualified for permanent tenure, it must be apparent that the word " hereafter " refers to September 1, 1924, the effective date of the act, and that as to such teachers the Legislature did not intend to require the application of the act to the school year beginning September 1, 1924.   With isolated exceptions contracts with all such teachers would have been made prior to that date. The board of education might, indeed, enter into new contracts or adopt new schedules after September 1, 1924, in which case the law would apply to the school year in question; but otherwise such teachers would be bound by their contracts entered into prior to September first.   It is not reasonable to assume that the Legislature did not intend, by virtue of the act itself, to grant the equal pay to

those teachers who had not yet obtained permanent employment and who had to enter into annual contracts, but did intend to create equal pay for those who had permanent employment under the Teachers' Tenure of Office Law. (Education Law, § 872, *supra.*) If the Legislature had so intended, clearer language would have been used to make this distinction between the two classes of teachers. It is fairer to suppose that the Legislature when aiming at discrimination did not intend to create discrimination in so doing.

Reading the 1st sentence of section 569 in the light of the foregoing discussion we think the Legislature intended to be understood to require as follows: On and after September 1, 1924, there shall be no discrimination in the determination of the amount to be paid or *in the determination of* the payments to be made to persons employed as teachers in the public schools based on sex. Had the Legislature intended to prohibit discrimination in the payments to be made rather than in the *determination* of the payments to be made, it would have repeated the preposition " in " before " the payments to be made." In the absence of such clear and unambiguous language, we think the section as a whole requires the interpretation which we have indicated. This interpretation gives due effect to both sentences and provides a uniform rule for salaries of all female teachers whether fixed by determination or by contract and without interference with existing school budgets. If the construction adopted by the Special Term had been the legislative intent, the 2d sentence could have been omitted and it would have been necessary to provide only that " On and after the taking effect of this act there shall be no discrimination in the payments to be made to persons employed as teachers in the public schools in any city, union free or common school district in this State based on sex." It is fairer to suppose that uniformity was intended but leaving to each board of education the duty to adjust itself to the law when it made new determinations or contracts or adopted new schedules of salaries.

The order should be reversed, with costs, and the proceeding dismissed.

All concur, except McCANN, J., who dissents with an opinion.

McCANN, J. (dissenting):

I dissent. When the statute says: " On and after the taking effect of this act [September 1, 1924] there shall be no discrimination in the determination of the amount to be paid or the payments to be made," etc., it means that there shall be no *discrimination either in fixing or in the payment of salaries.*

Order reversed on the law and proceeding dismissed, with costs.