In the Matter of the Application of CORNELIA A. MOSES and Others, Petitioners, for an Order for a Peremptory Mandamus against the BOARD OF EDUCATION OF THE CITY OF SYRACUSE, Respondent.

Supreme Court, Onondaga County, June 7, 1926.

Schools — salaries of teachers — peremptory order of mandamus to compel board of education of city of Syracuse to adopt new salary schedules for school year 1925–26, fixing compensation at same level paid male teachers in Syracuse high schools, pursuant to Education Law, § 569 (as added by Laws of 1924, chap. 614) — petitioners teach same subjects and do substantially same work as male teachers — salary schedule fixing salaries of certain male teachers in high schools in excess of that paid petitioners constitutes discrimination within meaning of Education Law, § 569 — commencement of proceedings three months after salary schedules became effective does not constitute laches — fact that petitioners accepted salaries fixed in schedules as established does not estop them from receiving increased salary — appeal to Commissioner of Education under Education Law, § 890, was not petitioners' sole remedy — Education Law, § 569, is constitutional — mandamus is proper remedy — order requiring payment of increased salaries held in abeyance until funds are available.

Section 569 of the Education Law, as added by Laws of 1924, chapter 614, which provides that " there shall be no discrimination in the determination of the amount to be paid or the payments to be made to persons employed as teachers in the public schools of any city * * * in this State based on sex," was violated when the board of education of the city of Syracuse, after adopting a resolution on January 5, 1925, making the compensation of the petitioners, female teachers in the high schools of the city, commencing September 1, 1925, $2,650, the largest amount paid any male teacher in the high schools of said city teaching the same subjects and doing the same work as the petitioners, in the interest of economy adopted new salary schedules on June 1, 1925, effective the first of the following September, in which the compensation of all instructors in both the junior and senior high schools was fixed at $1,600 for the first year of service, with an increase of $100 per year for each of the eight succeeding years of service, making the maximum salary $2,400, but because of the limitation of funds available for the current year inserted a provision in said resolution reducing all salaries for the year 1925–1926 ten per cent, making the compensation of each petitioner $2,160 for the current year, and further providing that the salary paid to any teacher should not be less than the sum which that same teacher would have received on September 1, 1925, under the salary schedule of 1920, which was $2,650 for certain male teachers, since by virtue of this provision in the present schedule said male teachers have drawn since September 1, 1925, a salary in excess of that paid the petitioners, none of whom, with one exception, are affected by the provision, notwithstanding the fact that the male members of the faculties, receiving $2,650 per year, are teaching the same subjects and doing substantially the same work as the petitioners.

Petitioners cannot be said to have been guilty of such laches as to deprive them of the right to a mandamus order where the proceeding was instituted less

**478** MATTER OF MOSES *v.* BOARD OF EDUCATION OF SYRACUSE.

Supreme Court, June, 1926. [Vol. 127]

than three months after the schedules took effect; the petitioners had a right to assume that the board of education would comply with the statute requiring equal pay.

The fact that petitioners have accepted the salary as fixed by the present schedules each pay day during the school year does not estop them from receiving the increased salary, if they are otherwise entitled to it, particularly where each petitioner filed with the board of education written objections to the present schedule before it was adopted and before accepting any payments based thereon filed with the city comptroller a statement that the reduced salary would be accepted only under protest.

Notwithstanding the fact that the petitioners might have taken this question to the Commissioner of Education, their sole remedy did not lie before said Commissioner under section 890 of the Education Law; they cannot be deprived of their legal right to redress their wrongs in the courts of this State.

The statute prohibiting discrimination in determination of amount of pay of teachers based on sex is constitutional.

Mandamus is the proper remedy under the circumstances here presented, since there is no discretion given to the board of education in fixing the salaries of the petitioners at a sum less than that given to male teachers for similar work and the duty of the board in fixing its schedules is ministerial only.

However, the order compelling the issuance of warrants in favor of the petitioners for the difference in salaries now paid them and the $2,650 to which they claim they are entitled, must be held in abeyance until moneys are available for such payment.

APPLICATION for a peremptory order of mandamus to compel the board of education of the city of Syracuse to adopt new salary schedules.

*James J. Barrett,* for the petitioners.

*Clarence E. Hancock, Corporation Counsel [H. Duane Bruce, First Assistant Corporation Counsel,* of counsel], for the respondent.

EDGCOMB, J. The petitioners, 100 in number, all of whom are women teachers in the various high schools of the city of Syracuse, claim that the board of education of that city has, contrary to the prohibition contained in section 569 of the Education Law of this State (as added by Laws of 1924, chap. 614), unlawfully discriminated against them because of their sex in the determination of the amount of salary to be paid them for the school year commencing September 1, 1925, and they bring this proceeding for a mandamus order to compel the board of education to adopt new salary schedules for the current school year, fixing their compensation at $2,650, the sum paid certain male teachers in the Syracuse high schools teaching the same subjects and doing substantially the same work as the petitioners, and to draw its warrants upon the treasurer of the city in favor of the petitioners for the difference in the salaries now paid them and the $2,650 to which they claim they are entitled.

Section 569 of the Education Law was passed in 1924 and took effect September first of that year. It provides as follows: " On

and after the taking effect of this act there shall be no discrimination in the determination of the amount to be paid or the payments to be made to persons employed as teachers in the public schools in any city, union free or common school district in this state based on sex. All contracts hereafter made for the employment of public school teachers and all schedules of salaries and salary increments adopted by boards of education, as provided in this chapter, shall not discriminate between the salaries and salary increments of public school teachers to be paid under such contracts and schedules because of the sex of said public school teachers, notwithstanding the provisions of any general or special act inconsistent herewith."

The facts leading up to this controversy are conceded. On the 19th day of July, 1920, the board of education of the city of Syracuse adopted by-laws, as it was required to do by the Education Law, establishing schedules of salaries for all members of the supervising and teaching staff of the city. That schedule remained unchanged and effective up to the school year commencing September 1, 1924, and fixed the salary of the petitioners, with several exceptions, at $1,950 per annum, and the compensation of various male teachers in the high schools at a larger sum, some at $2,650 per year, and others at salaries ranging from $1,950 to $2,650.

On January 5, 1925, the board, acting upon the theory that the statute of 1924 was mandatory and compelled the city to pay male and female teachers engaged in the same or similar work the same salary, adopted a resolution making the compensation of the petitioners for the school year commencing September 1, 1925, $2,650, the largest amount paid any male teacher in the high schools teaching the same subjects and doing the same work as the petitioners.

This action added a large sum to the ever-increasing tax budget of the city. In a spirit of economy, which is always highly commendable if rightly directed, and actuated by an honest desire to do what appeared to be for the best interests of the city and the entire corps of teachers in the public schools, and in an endeavor to readjust all salaries, and make them, as nearly as practicable, equal to that paid in other first class cities of substantially the same population as Syracuse, the board of education, on June 1, 1925, adopted new salary schedules effective the first of the following September, in which the compensation of all instructors in both the junior and senior high schools was fixed at $1,600 for the first year of service, with an increase of $100 per year for each of the eight succeeding years of service, making the maximum salary $2,400. Because of the limitation of funds available for the

Supreme Court, June, 1926. [Vol. 127

current year, a provision was inserted reducing all salaries for the present year ten per cent, making the compensation of each petitioner $2,160 for the current year. So far no claim can be made that the action of the board was illegal. The trouble here is caused by a further clause which provided that the salary paid to any teacher should not be less than the sum which that same teacher would have received on September 1, 1925, under the salary schedule of July 19, 1920. As before noted, under this former schedule the salaries of certain male teachers in the high schools was fixed at $2,650, and by virtue of this provision in the present schedules these men have drawn since September 1, 1925, a salary in excess of that paid the petitioners, none of whom, with one exception, are affected by this provision. Concededly certain of the men now receiving $2,650 per year are teaching the same subjects and doing substantially the same work as the petitioners. The difference in salary paid these men and that paid the petitioners constitutes the alleged discrimination of which the latter complain.

In determining whether there has been any discrimination against the petitioners because they are women, and whether the act of 1924 has been violated, it is important to bear in mind the intent and purpose of the Legislature in enacting the statute. That design is apparent. It is set forth in the statute itself as well as in its title. For some years discrimination in the salaries paid to members of the teaching staff in cities having a population of one million or over on account of sex has been forbidden. (Education Law, § 883, added by Laws of 1919, chap. 645, as amd. by Laws of 1920, chap. 680.) It is common knowledge that in the past men teaching in our public schools have commanded a larger salary than women, even though the two were teaching the same subjects. Since women were given the franchise, and have gradually taken their place alongside of their brothers in so many callings, there has been a tendency to put the two on the same level as regards their pay. The tendency nowadays is to look at the outcome, and not at the sex of those who bring about the result. Clearly the Legislature intended to apply to all public schools the rule applicable to New York city, and to put all teachers, regardless of sex, on the same level when it came to fixing their compensation. That design is obvious in the memorandum of the Governor in his approval of the bill in question, when he said: " I am unable to understand why a woman performing exactly the same duties as a man should receive less compensation for her services. For that reason the bill is approved."

It is true that a discrimination is not apparent from a mere reading of the schedules themselves. On the face of the document

there is no arbitrary imposition of unequal salaries of any teachers of the same class. All of the salary provisions apply alike to both men and women. All high school teachers, regardless of sex, who have been employed since the adoption of the 1920 schedules, are receiving a salary of $2,160. The clause giving to all teachers the same salary they would have received under the 1920 schedule has inured to the benefit of one hundred and thirty-nine teachers in the various schools of the city, seventy-two of whom are women and sixty-seven men. The respondent urges, therefore, that no discrimination in the determination of the salary to be paid high school teachers on account of sex has been established.

If a discrimination exists, it is in the practical working out of the present schedules. The petitioners assert that the proof of the pudding is the eating, and that the mere fact that their brothers, who are possessed of the same qualifications and are teaching the same subjects as they are, and are receiving a salary in excess of that allowed them, constitutes a discrimination, and is a violation of the statute.

In *Teece* v. *Board of Education* (27 State Dept. Rep. 652) the Commissioner of Education of the State of New York, who had before him a case involving an alleged violation of section 883 of the Education Law prohibiting any discrimination in the salaries of members of the teaching staff in New York city, laid down the rule as to what actually constituted such discrimination in the following language: "If a man teacher and a woman teacher are required to possess the same qualifications and teach the same subjects or perform substantially the same duties, they must be paid alike or there will be a discrimination within the meaning of the statute."

Certainly there is a difference in the amount of money actually paid to the men and women teachers of the high schools for the same work. That constitutes a distinction between the two. No reason therefor is given. It does not appear that the favored male members of the teaching staff have been in service longer than their less fortunate sisters, or that they are any better teachers. They were receiving a larger salary than the women back in 1920, when there was no legal barrier, and that salary has been continued. The only inference permissible it seems to me is that the difference in salary is due to the fact that the higher paid teachers are men. To hold that under the facts in this case section 569 (as added by Laws of 1924, chap. 614) has not been violated is to totally disregard the very purpose of the Legislature in its enactment.

The wisdom of the statute or the practical result of its enactment

31

in adding many thousands of dollars to the budget of every city in the State, and the inability of the board of education to reward some worthy and exceptionally competent male teacher without a similar reward to all the women teachers of the city doing similar work is not before the court. That is an argument which should be addressed to the Legislature. We must take the statute as we find it, and give effect to its language and the purpose for which it was enacted. Much might be said against the policy of treating all teachers alike. It is common experience that in nearly every school at least one teacher, sometimes a man and other times a woman, stands head and shoulders above the others in his or her ability to teach and inspire the youth. The services of such is worth many times that of the others. Yet under our system of putting all teachers, good, bad and indifferent into one class, graded only by their years of experience, no pecuniary reward can be given to the worthy over the others.

But if there was any question as to whether the petitioners have been discriminated against because of their sex, that doubt is dispelled by the action of the respondent in January, 1925. The board of education not only recognized and acknowledged that a discrimination did exist in the salaries paid the men and women teachers in the public schools in Syracuse, but rectified and corrected the difference by raising the salary of all women teachers to that of men doing the same work, and gave to the petitioners $2,650 for the year, the highest salary paid any male teacher. In the light of such action the present claim of the board of education that there is no discrimination on account of sex cannot be given much weight.

True under the subsequent decision of the Appellate Division of the Third Department in *Matter of Rockwell* v. *Board of Education* (214 App. Div. 431) the board was not obligated to change the schedules in force when the act of 1924 went into effect. But the board did act. It recognized that there was a discrimination against the women teachers which the act sought to avoid, and it voluntarily corrected the discrepancy. Having once acted and having adopted new schedules after September 1, 1924, the board cannot, under the rule laid down in the *Rockwell Case (supra),* go back to the schedules in force before that date.

If I am right in the conclusions already reached, and the petitioners are entitled to the increased salary sought, any technical objections to a mandamus order can and should be brushed aside, unless they are of such a character as to make such remedy improper. It is necessary, however, to briefly dispose of the various other objections raised by the respondent to the relief sought.

The claim that the petitioners have been guilty of such laches as to deprive them of a right to a mandamus cannot be upheld. This proceeding was commenced November 19, 1925. Since that time any delay in bringing the case to trial has been due as much, if not more, to the respondent than to the petitioners. While the present schedules were adopted June 1, 1925, they did not take effect until September first of that year, and the petitioners were not injured until that time. They had a right to assume that the respondent would comply with the statute. A mandamus will not lie for some anticipatory refusal of a public official to perform his duty. This proceeding was instituted less than three months after the schedules took effect, and less than two months after the first payment was made thereunder. That does not constitute such neglect on the part of the petitioners as to bar them from any remedy they may otherwise have.

Moreover, a clear, mandatory duty rested upon the respondent, if it adopted any new schedules after September 1, 1924, to make the salary of the women teachers equal to that of the men, where the two were performing the same or similar work. That duty was a continuing one until it was performed. Under those circumstances it cannot be held that the proceeding was instituted too late. (*People ex rel. Cropsey* v. *Hylan,* 199 App. Div. 218; affd., 232 N. Y. 601.)

The petitioners have accepted the salary fixed by the present schedules on each pay day during the present school year. That fact does not estop them from receiving the increased salary, if they are otherwise entitled thereto. Each petitioner filed with the board of education written objections to the present schedule before the same was adopted, and before accepting any payments based thereon filed with the city comptroller a statement that the reduced salary would be accepted only under protest.

Regardless of such protest, however, the petitioners have not waived their right to the salary paid their brothers by accepting payments made at a lesser rate fixed by the present schedules, because their right to the larger amount is fixed by statute and not by contract. (*Clark* v. *State of New York,* 142 N. Y. 101; *Kehn* v. *State of New York,* 93 id. 291; *O'Connor* v. *City of New York,* 178 App. Div. 550; *Moore* v. *Board of Education,* 121 id. 862; *Loewy* v. *Board of Education,* 59 Misc. 70.)

The claim of the respondent that the petitioners' sole remedy was to appeal to the Commissioner of Education under section 890 of the Education Law* was disposed of on the return of the

* Originally § 880 (Laws of 1910, chap. 140); renumbered § 890 by Laws of 1918, chap. 252.— [REP.

**484** Matter of Moses *v.* Board of Education of Syracuse.

Supreme Court, June, 1926. [Vol. 127

notice of motion. I see no reason for changing my opinion that the doors of the court are not closed to the petitioners, even though they might have taken the controversy to the Commissioner of Education. For the reasons stated in my memorandum covering this objection, I must still hold that the petitioners cannot be deprived of their legal right to redress their wrongs in the courts of the State.

I do not think that it can be said that the statute in question is in violation of the State Constitution as claimed by the respondent. The constitutionality of this act was upheld by Judge Rhodes in the *Rockwell Case* (125 Misc. 136) and while that decision was reversed by the Appellate Division (214 App. Div. 431), the reversal was because that court placed a different construction upon the section from that put upon it by the trial court. It was not even hinted in the opinion in the Appellate Division that the statute was unconstitutional.

This brings us to the question of whether mandamus is the proper remedy to apply to this situation.

It is true, as urged by respondent, that a mandamus will not lie where the duty, the performance of which is sought to be coerced, is impossible of being carried into execution.

If I am right in the conclusions already reached, there is no discretion given to the board of education in fixing the salary of the petitioners at a sum less than that given to male teachers for similar work. The duty of the board in fixing its schedules is imperative. It is ministerial only. It is in no sense judicial. No discretion vests with the board. Under these circumstances a mandamus is a proper remedy to compel the performance of a clear, legal duty enjoined upon the respondent by law. A public officer can be compelled to perform a ministerial duty.

Section 882 of the Education Law (as added by Laws of 1919, chap. 645) requires the board of education of each city to adopt by-laws fixing the salaries of all teachers. The Legislature has, however, tied the hands of such boards by statutory limitations below which they cannot go.

The respondent having neglected and refused to perform its clear duty in fixing the salaries of the petitioners in accordance with the requirements of the statute, a mandamus order requiring them to so do is proper.

Beyond this I do not think the order should go at this time. There is no fund for the payment of this increased salary, and no money in the hands of the city treasurer to pay such additional amount. The board of education has no power to raise money by taxation. Its function, so far as raising money is con-

cerned, is advisory only. (*Matter of Emerson* v. *Buck*, 230 N. Y. 380.)

Section 880 of the Education Law (as added by Laws of 1917, chap. 786) requires all public moneys apportioned by the State to a city and all funds raised by the city for school purposes to be paid into the treasury of the city, and makes it unlawful for a city treasurer to permit the use of such funds for any purpose other than that for which they were lawfully authorized. Payment of any warrant cannot be enforced until moneys are available for such payment. (*People ex rel. Burbank* v. *Robinson*, 76 N. Y. 422.)

After the board of education has adopted proper schedules of salaries, the petitioners will be in shape and at liberty to take such action as they deem proper to make effective the action of that board. I have no doubt, however, if this decision is upheld, that the city will willingly and voluntarily take such action as may be necessary to provide the money to pay the petitioners the sum due them.

Prepare an order in accordance with this opinion and submit same to me for my signature.