In the Matter of CORNELIA A. MOSES et al., Respondents, against THE BOARD OF EDUCATION OF THE CITY OF SYRACUSE, Appellant.

**Education Law — Syracuse (city of) — teachers — statutory provision forbidding discrimination in pay of teachers based on sex — not intended to equalize pay of all teachers doing similar work — not intended to interfere with existing schedules or contracts — provision in schedule of salaries, as a result of which some men receive more pay than equally qualified women, not invalid when based on other considerations than sex.**

1. Chapter 614 of the Laws of 1924, amending the Education Law so as to provide that after September, 1924, there should be no discrimination in the amount to be paid or the payments to be made to teachers in any city based on sex, was designed not to equalize the pay of all teachers doing similar work, but to prohibit future schedules or contracts where inequality was based on the

ground of sex. By the phrase " or the payments to be made," the Legislature did not intend to interfere with existing schedules or contracts. Schedules legally adopted prior to the enactment of the statute remained in force.

2. Where, therefore, upon the adoption of a new schedule in 1925, by the board of education of the city of Syracuse, it was found that a number of teachers, principally men, were already receiving larger salaries than provided, which salaries might not be reduced nor the teachers discharged except for cause, it was lawful for the board to provide in its general schedule, applicable to men and women alike, that " no salary paid to any present teacher under the new schedule shall be less than that teacher would have received on September 1, 1925, under the salary schedule adopted by the board of education on July 19, 1920." Though the practical result of this provision is that some men actually receive more pay than equally qualified women, the discrimination is not " based on sex " but arises solely from other conditions. The courts, therefore, may not interfere.

*Matter of Moses* v. *Board of Education,* 218 App. Div. 811, reversed.

(Argued March 31, 1927; decided May 3, 1927.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 9, 1926, which unanimously affirmed an order of Special Term granting a motion for a peremptory order of mandamus to compel the Board of Education of the City of Syracuse to fix the salaries of respondents, women teachers in the public schools of the city of Syracuse, on an equality with that paid to male teachers of similar grade.

*Clarence E. Hancock, Corporation Counsel (H. Duane Bruce* of counsel), for appellant. No discrimination based on sex has been made under the salary schedule of June 1, 1925. (*Buckbee* v. *Board of Education,* 115 App. Div. 356; 187 N. Y. 544; *Matter of Emerson* v. *Buck,* 230 N. Y. 380; *Matter of Rockwell* v. *Board of Education,* 214 App. Div. 431.)

*James J. Barrett* for respondents. In the adoption of the schedules of June, 1925, appellant discriminated against respondents in the determination of the amounts

to be paid and the payments to be made them as salaries and such discrimination was based on sex. (*Matter of Teece* v. *Board of Education*, 27 St. Dept. Rep. 652; *Matter of Rockwell* v. *Board of Education*, 214 App. Div. 431; *Farmers Bank* v. *Hale*, 59 N. Y. 53; *People* v. *Glynn*, 128 App. Div. 257; *Brooklyn, etc., Board of Education* v. *New York City Board of Education*, 157 N. Y. 566; *Tonnele* v. *Hall*, 4 N. Y. 140; *Buckbee* v. *Board of Education*, 115 App. Div. 366; 187 N. Y. 544.)

ANDREWS, J.   On July 19, 1920, under the authority of the Education Law (Cons. Laws, ch. 16), the board of education of Syracuse adopted a schedule of teachers' salaries, with an annual increment.   Frankly, because of their sex, more was to be paid to men than to women of similar length of service and doing the like work.   As a result by 1925 some forty-four male teachers were receiving $2,650 annually; eight, various sums from $2,250 to $2,600 and one woman $2,250.   To these salaries such teachers were entitled.   They might not be reduced. Nor might the teachers be discharged except for cause.

The Education Law was amended by chapter 614 of the Laws of 1924.   This act was designed not to equalize the pay of all teachers doing similar work, but to prohibit future schedules or contracts where inequality was based on the ground of sex.   On and after September, 1924, it stated there shall be no discrimination in the amount to be paid or the payments to be made to teachers in any city based on sex, and it prohibited such discrimination in contracts thereafter made or in schedules adopted by boards of education.

It has been held that by the phrase " or the payments to be made " the Legislature did not intend to interfere with existing schedules or contracts.   (*Matter of Rockwell* v. *Board of Education*, 214 App. Div. 431.)   For the reasons stated by the Appellate Division we agree with this conclusion.   We assume, therefore, that the schedule

of 1920, legal when adopted, remained in force. Only when a change came the new schedule must contain no discrimination as to salaries " based on sex."

Between 1920 and 1925 Syracuse had become in fact what was then known as a city of the first class. On June 1 of the latter year, the board of education reciting the financial difficulties caused by the act of 1924 and stating that Syracuse should provide for its teachers' salaries equal to those paid in Rochester and Buffalo, adopted a new schedule. There were 930 teachers employed in the schools, 849 women and 81 men. Under its provisions the salaries of 622 women teachers were increased. New teachers, men and women, were to receive the same amount. And again irrespective of sex, the salary of teachers doing the like work and having the like experience as substantially all the relators was fixed at $2,400 less such a percentage as lack of funds required. For 1925 this percentage was to be 10%, making the salary $2,160.

The board, however, found itself in a dilemma. Fifty-two men and one woman were, as has been said, already entitled to more than that amount. Forty-four men, not because of longer service or greater ability, but because of their original contract, had a claim of $2,650 annually. Must the salary of every woman of equal capacity be raised to $2,650? Must the salary of every like man be so raised? Could the first provision be made and not the second? The board attempted to answer the problem by a provision in its general schedule, applicable to men and women alike, that " no salary paid to any present teacher under the new schedule shall be less than that teacher would have received on Sept. 1, 1925, under the salary schedule adopted by the board of education on July 19, 1920." The courts below have held that this solution is forbidden by the statute and that the board should be compelled by mandamus to raise the salaries of the women teachers to $2,650.

The question before us is whether because the practical result of this schedule is that some men actually receive more than some equally qualified women, it makes a discrimination " based on sex."

We deal with the situation as it existed in 1925. It was not then necessary to adopt a new schedule. If it was thought wise, however, to do so the otherwise wide discretion of the board was limited in one particular. The new rules might not provide greater pay for one because he was a man than for a woman equally qualified. Doubtless, too, if a man and a woman teacher " are required to possess the same qualifications and teach the same subjects or perform the same duties, they must be paid alike " or *prima facie* there will have been done what the law forbids. We do not think, however, that the mere difference in salaries is conclusive.

Unquestionably the origin of the right of the men in 1925 to receive $2,650 in perpetuity was that they were men. In 1920 the board discriminated in their favor on that ground alone, as it then might do. Later it lost that power. Every man and every woman need not receive precisely the same salary. But any distinction drawn might no longer depend on the sex of the teacher. And good faith was requisite.

The record before us shows a difference in the salaries to be received. But this difference was not continued by the schedule of 1925 with the design of rewarding men as men and penalizing women as women. At that date it was not " based on sex." It was the result of entirely different considerations. There was no favoritism. An examination of the schedules shows a scrupulous attempt to follow the act of 1924. There was no design to thwart the act by indirection. But equality of salaries must be harmonized with existing rights. The salary of $2,650 for certain men teachers was preserved to them, just as the salary of $2,250 was preserved to Miss Moses, not because they were men but because

the law prohibited interference with it. That the rights of the men originated in sex discrimination is immaterial. Disparity in salaries exists. Men receive a greater amount than women equally qualified. But unless this difference arising under the schedule of 1925 is " based on sex; " if it arises solely from other conditions existing at that time, the courts may not interfere. However important to the State is the need of qualified teachers; however inadequate, in view of their ability, training and devotion the payment now provided for the teaching staff, the one question before us is whether the particular schedule of 1925 violated the act of 1924. We hold that it did not.

If this be so, the other questions discussed in the briefs need not be considered. The order of the Appellate Division and that of the Special Term should be reversed and the application for mandamus denied, without costs in any court.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Ordered accordingly.