C. HELEN REGAN ET AL., PROSECUTORS IN CERTIORARI, v. THE STATE BOARD OF EDUCATION OF THE STATE OF NEW JERSEY, THE BOARD OF EDUCATION OF THE CITY OF ELIZABETH ET AL., DEFENDANTS IN CERTIORARI.

Argued October 8, 1931—Decided April 8, 1932.

Before Justices TRENCHARD, DALY and DONGES.

For the prosecutors, *Samuel Koestler*.

For the defendants, *Martin P. O'Connor*.

The opinion of the court was delivered by

TRENCHARD, J.   This writ of *certiorari* brings up for review the judgment of the state board of education, rendered February 7th, 1931, reversing the judgment of the state commissioner of education in a proceeding instituted by C. Helen Regan and others before him.

The situation was this:

On February 13th, 1930, there was presented to the Elizabeth board of education a petition, by the "Secondary School Women's Club," alleging that it represented the women teachers employed in certain of the public schools of the city of Elizabeth, and requesting that the local board "immediately comply with and enforce the provisions of an act of the legislature of the State of New Jersey entitled 'An act prohibiting discrimination on account of sex in the employment of teachers,' and known as chapter 238 of *Pamph. L.* 1925, and passed on March 21st, 1925, by forthwith adopting resolutions fixing the salary of women teachers on the same scale as is and has been paid to men teachers, so that hence-

forth there shall be no discrimination based on sex," and demanding that the board "pass proper resolutions for the raising of funds to pay to the women teachers sums of money equal to the difference between salaries paid men teachers since March 21st, 1925, to the present time." The board refused to comply with the petition, and denied that it was violating the statute referred to. Subsequently, and on May 2d, 1930, a petition of appeal was filed with the state commissioner of education by certain individual teachers. On October 4th, 1930, the commissioner rendered his decision in which he held (a) that the claim for salary for years prior to the appeal was without merit and that item was denied; (b) that the board proceed at once to formulate a salary schedule without sex discrimination and pay to the petitioners the difference between the salaries which they had received and that to which they claimed to be entitled under an alleged new schedule from the date of the filing of the appeal. The local board thereupon appealed from that judgment to the state board of education, which, after hearing, reversed the state commissioner of education and sustained the local board. It is this latter judgment which is now before the court on *certiorari*.

In the view we take of the case it is unnecessary to consider the contention of the defendants in *certiorari* that the state commissioner had no jurisdiction; and we now proceed to examine the merits of the decision.

Chapter 238 of laws of 1925 (*Pamph. L.* 1925, *p.* 669), invoked by the prosecutor declares that "in the formulation of a scale of wages for the employment of teachers * * * there shall be no discrimination based on sex." Throughout the entire controversy the Elizabeth board of education maintained that, *since the passage of the act of 1925,* it had not "formulated a scale of wages for the employment of teachers."

But the prosecutors contend that the board, in adopting annually reports setting forth the names of the teachers and the salaries they were to receive for the following school

year, and containing general information, has the effect of establishing a new salary schedule each year and as such it is a violation of the statute.

The record does not support that contention. On the contrary it is plain that these reports annually adopted subsequent to 1925, were adopted purely as an administrative proceeding. They were merely declaratory of the basic general salary schedule or "scale of wages" formulated and adopted in 1922 (modified in 1924) for a period of ten years. They were merely for the guidance of principals, secretaries and others in the preparation of payrolls and to facilitate generally the business of the board, and they have not the character or the effect of a "formulation of a scale of wages for the employment of teachers," within the meaning of that language in chapter 238 of laws of 1925.

The prosecutors next contend that the board has violated chapter 238 of laws of 1925 by thereafter adopting annually a resolution that "the rules and regulations of the preceding year be adopted as the rules and regulations for the government of the board for the ensuing year," and argue that thereby it adopted a new scale of wages which must be recast in the light of the statute. But this is not so. The mere adoption of such a parliamentary motion was not intended to be, and was not, the "formulation of a scale of wages for the employment of teachers" within the meaning of that language in the act of 1925.

It is further urged by the prosecutors that chapter 238, *Pamph. L.* 1925, is mandatory in its terms, and that, therefore, it was the duty of the local board of education upon this act taking effect to reframe its salary schedule and place men and women teachers on the same salary level, in other words, to equalize the pay of men and women performing similar work, and that by reason of its failure to do so, the teachers are entitled to the difference from that date (March 21st, 1925) between the wages they have received and those which they would have received had the law been complied with.

The statute is entitled "An act prohibiting discrimination

on account of sex in the employment of teachers," passed March 21st, 1925, the material parts of which provide:

"In the formulation of a scale of wages for the employment of teachers * * * there shall be no discrimination based on sex * * *."

The language of the act does not support the contention of the prosecutors. The act does not abrogate the salary schedule or scale of wages adopted and in force prior to the passage of the act. It is the "formulation of a scale of wages" after the passage of the act (March 21st, 1925) with which the statute deals. There is no direction by the statute to local boards of education to formulate a scale of wages placing men and women on the same wage level but rather a command that "in the formulation" that is to say, when in the future the board shall undertake the "formulation of a scale of wages," there shall be no discrimination based on sex.

A statute will be given a prospective effect, unless there are words contained therein expressing a contrary intention. *Monahan* v. *Matthews,* 91 *N. J. L.* 123; *Citizens Gas Light Co.* v. *Alden,* 44 *Id.* 648. Words in a statute ought not to have a retrospective operation, unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot otherwise be satisfied. This rule ought especially to be adhered to when such a construction will alter the pre-existing situation of the parties or will affect their antecedent rights, services or remuneration, which is so obviously improper that nothing ought to uphold and vindicate the interpretation but the unequivocal and inflexible import of the terms, and the manifest intention of the legislature. *Erie Railroad Co.* v. *Callaway,* 91 *Id.* 32; *Baur* v. *Common Pleas of Essex,* 88 *Id.* 128; *Williamson* v. *New Jersey Southern Railroad Co.,* 29 *N. J. Eq.* 311.

The State of New York has a similar statute which became effective September 1st, 1924. That statute was construed by the Court of Appeals of the State of New York in the case of *Moses et al.* v. *Board of Education of the City of Syracuse,* 245 *N. Y.* 106; 156 *N. E. Rep.* 631, reversing the Supreme

Court, Appellate Division. That statute had for its purpose the same object as our statute. The court held that the act was "designed * * * to prohibit *future* schedules or contracts where the inequality was based on the ground of sex;" that by the language "or the payments to be made" the legislature did not intend to interfere with the existing schedules or contracts," and that "only when a change came, the *new schedule* must contain no discrimination as to salaries based on sex."

The prosecutors also urge that the adoption by the local board of a report on January 28th, 1927, providing for a stated "supplementary increment" to teachers who reach the maximum salary under the basic schedule (which supplementary increment was accepted by all such without complaint), was the "formulation of a scale of wages" within the purview of the statute of 1925, prohibiting discrimination based on sex, and consequently the board's legal duty was to recast its entire salary schedule and to make provision for the payment to women teachers of the same salary as is paid to men where they are performing similar work, to run from January 28th, 1927, the date of the adoption of the report.

We do not think that the adoption of such report had that effect. It is obvious from the language of the resolution that the local board did not deem its adoption as a formulation of a scale of wages. The obvious purpose and effect of the report was that pending a study of the salary question (by the report continued for such purpose) a stated supplementary increment, treating alike men and women doing similar work, should be given teachers who reached the maximum salary under the basic schedule. At the time of the adoption of the report, eleven women and five men received the supplementary increment, having reached the maximum salary provided for in the basic schedule. The act of granting the "supplementary increment" was not an act formulating a scale of wages, but was rather the "formulation" of a "supplementary increment." It did not create, nor was it intended to create, a new schedule. On the contrary, it grants an "increment" only, quite separate and distinct from all

other considerations. The basic salary schedule remains. Both basic salary schedule and the "supplementary increment" rest upon distinct foundations yet consistently legal. The general basic schedule of 1922, modified in 1924, is the authority and warrant, good under the statute for the compensation therein provided for; and the report is the authority and warrant for the "supplementary increment" also consistent with the statute because it treats both *men and women alike,* thus being free from the vice of discrimination prohibited by the statute. The discrimination which exists grows out of the basic schedule (not unlawful under the statute) and not out of the act creating the "supplementary increment" adopted since the passage of the law, consequently the discrimination based on sex was not brought about by an act of the board after the adoption of the statute. The legislature evidently did not intend by the statute to deprive the board of the power, in the exercise of its sound discretion, to grant teachers reaching a maximum, such a "supplementary increment" so long as it treated both men and women alike. Such in effect was the decision of the Court of Appeals in *Moses et al.* v. *Board of Education of the City of Syracuse, supra.*

Lastly, the prosecutors contend that the notice of appointment which the city superintendent sent annually to each of the teachers engaged, with a statement of the amount of the salary, based on the basic scale of wages, had the effect of formulating a "scale of wages" in violation of the statute. Both the state commissioner and the state board in their decisions disagreed with the prosecutors, and we think rightly. The notices were nothing more than routine administrative acts on the part of the superintendent of schools.

We believe that the foregoing in effect disposes of every question raised and argued.

The judgment of the state board of education will be affirmed, with costs.