In the Matter of HARRY M. CHAPIN, Respondent, against THE BOARD OF EDUCATION OF THE CITY OF BUFFALO, Appellant.

Fourth Department, January 6, 1943.

*Andrew P. Ronan, Corporation Counsel (Gerald J. Shields* of counsel), for appellant.

*William J. Sernoffsky* for respondent.

DOWLING, J. Harry M. Chapin, hereinafter referred to as the petitioner, was appointed as a temporary manual training teacher in the Buffalo School System by the Board of Education of the city of Buffalo, hereinafter referred to as the Board, on September 4, 1922, and he has since then been connected with that system as a teacher. In June, 1924, the Board conducted an examination for vocational teachers in its vocational schools. Mr. Chapin took the examination, passed and on September 16, 1924, received a final certificate from the Board licensing him as " a teacher of social subjects " in its vocational schools. From 1924 to 1932 the petitioner taught manual training and shop work practice. From 1933 to 1935 the petitioner taught more academic hours and subjects than he taught vocational hours and subjects. From 1936 to 1942 the petitioner has taught academic English and nothing else. All of his teaching has been done in vocational or continuation schools. While, in the beginning, the petitioner was permitted to teach vocational subjects, he was not licensed to teach vocational subjects and the Board never classified him as a vocational teacher. " Social subjects " are academic subjects. They comprise " civics, history, geography, economics and economic geography." At all times herein social subjects and English have been included in the definition of academic subjects both by the Board and by the Regents of the State of New York.

In 1920, section 884 of the Education Law was amended to include a provision that in cities of the first class having a population of less than one million, the salaries and salary schedules to be adopted might not be less than "four hundred dollars in advance of the compensation or salary fixed in the schedules adopted by said Board of Education prior to and in effect on the first day of March, nineteen hundred and twenty, as the same shall appear in the schedules filed in the office of the State Commissioner of Education." The Board, in obedience to the requirements of the statute duly adopted salary schedules and filed them with the Commissioner of Education at Albany on March 1, 1920. The schedules contained the following classification: vocational teachers — minimum $1,400 — maximum $2,200. Adding the $400 required by the statute made the minimum-maximum salaries for vocational teachers $1,800–$2,600. Since that time vocational teachers in Buffalo have been entitled to at

least salaries in these amounts. Since that time the salary schedules filed by the Board in the office of the Commissioner of Education have specified these minimum-maximum salaries for vocational teachers. In 1919 the Board also filed in the office of the Commissioner of Education at Albany salary schedules for high school classroom teachers showing minimum $1,200 — maximum $2,000. Adding the four hundred dollars, the minimum-maximum statutory salary schedule for classroom teachers in Buffalo was $1,600–$2,400.

On September 1, 1924, the Board fixed Mr. Chapin's salary at $2,000 per annum. By 1931 Mr. Chapin's salary had been increased to $2,600 per year. His salary continued and was paid at that figure until September, 1939, when it was reduced by the Board to $2,500 per year thereby reducing it to a level with the salaries of teachers teaching academic subjects in the Buffalo high schools. By action of the Board, the salary of the petitioner has since been maintained at the $2,500 level. The petitioner and twenty-nine others similarly situated, including the twelve who have made affidavits herein, protested the reduction to the Board but without result. On May 21, 1940, the petitioner and the said twenty-nine other persons similarly situated appealed from the decision of the Board to the Commissioner of Education at Albany. The appeal was argued before the Commissioner on July 2, 1940. On July 1, 1941, the Commissioner handed down his decision and made an order dismissing their appeal. Whereupon, and in July, 1914, the petitioner, on notice to the Board, applied, under article 78 of the Civil Practice Act, to the Special Term for an order directing the Board to pay the petitioner and the twelve others concerned in this proceeding, hereinafter referred to as associates, back pay in the amount of $300 each and to continue to pay them annually salaries of $2,600 each. The order prayed for was predicated upon the claims set forth in the petition and the supporting affidavits that the petitioner and the twelve affiants were and are vocational teachers and that they, and each of them, had attained and were being paid maximum mandated salaries of $2,600 per annum as such teachers when their salaries were reduced by the Board to $2,500 in 1939. The Board answered denying the right of the petitioner and his associates to receive salaries of $2,600 each and setting up two affirmative defenses, in substance, *viz.* (1) that said parties are not, and never have been, vocational teachers but were and are academic teachers teaching in vocational or continuation schools and that they never had been given salaries as vocational teachers and (2) setting up the

decision and the order of the Commissioner of Education as *res judicata.* No reply or reply affidavits were served by the petitioner putting in issue any new matter alleged in the affirmative defenses. The matter was submitted to the Special Term on the pleadings. The Special Term held that no triable issue had been raised by the pleadings and it dismissed the affirmative defenses and granted the relief prayed for. From the order entered upon the decision the Board has appealed.

The learned Special Term took the view that the petitioner and his associates were vocational teachers because their teaching had been carried on in vocational schools. The allegations of the affirmative defenses, deemed to be true because not denied (*Marasco* v. *Morse,* 22 N. Y. Supp. [2d] 315, 323; affd., 263 App. Div. 1063), indicate quite clearly that the petitioner and his associates never have held licenses from the Board to teach vocational subjects; that their licenses merely qualified them to teach academic subjects in vocational or continuation schools; that they were listed on the salary schedules as teachers of academic subjects in vocational or continuation schools and that they were paid salaries for services rendered as such teachers. The learned court also took the view that the action of the Board was arbitrary in listing said teachers as academic teachers and reducing their salaries to the level of the salaries paid to academic teachers. The court also took the view that the decision and order of the Commissioner of Education were not *res judicata* because of the arbitrary action of the Board in reducing the salaries. We are inclined to the view that the decision and order of the Commissioner are not *res judicata* for the reason that, so far as the record shows, the only issue presented to the Commissioner or passed upon by him was as to whether or not the appellants had been placed in the proper salary schedules in accordance with statutory requirements. The appellants on that appeal contended that they were vocational teachers because they had taught in vocational schools. The Commissioner held that " While the term in 1919 ' vocational teachers ' was a rather loose term, nevertheless during all these years, with the apparent consent of the teachers involved, it has excluded the teachers of academic subjects. * * * At no time have they ever [the Board] placed appellants in the salary schedule for vocational teachers. * * * The Board of Education all these years has drawn a clear line of demarcation between those teachers who have been teaching recognized vocational subjects and those who have been teaching academic subjects in vocational schools, * * *

and I conclude that teachers of academic subjects, even though they taught in vocational schools, were not included in the item ' vocational teachers ' as appearing in that schedule at that time. * * *. As a general rule it seems clear that those teachers who devote a majority of their time to instructional service in approved vocational subjects are vocational teachers. Those who devote a majority of their time to recognized non-vocational or academic subjects are teachers of academic subjects even though they teach in vocational schools. The Board of Education of the city of Buffalo following this should again examine into the services being performed by the appellants and allocate them to the proper schedule in accordance with the above.'' The proceeding before us involves not only the proper classification of the petitioner and his associates but it involves the power of the Board to reduce the salary of the petitioner and his associates from $2,600 to $2,500 per annum. The Board made this reduction on the theory that the petitioner and his associates were academic teachers and as such were entitled to receive only $2,500 per annum, the same as the academic teachers in the regular high schools were receiving. The facts, not in dispute, sustain the findings of the Commissioner of Education and of the Board to the effect that the petitioner and the others similarly situated never have been vocational teachers as that term has been understood since 1919 and that they never have received salaries as vocational teachers. The Board maintains, and it is true, that $2,500 per annum is the top salary payable to teachers of academic subjects in the Buffalo high schools under section 884 of the Education Law as added by chapter 645, Laws of 1919, and amended by chapter 680, Laws of 1920, and chapter 757, Laws of 1936. But the petitioner and his twelve associates maintain that the Board having once fixed their salaries at $2,600 per annum had no right thereafter to reduce them to $2,500 per year. This question, so far as the record discloses, was not involved in the appeal before the Commissioner of Education and for this reason his decision and order are not *res judicata* here.

The petition alleges and the answer admits, '' That in accordance with the previous mentioned sections of the Education Law [§§ 882-887] the petitioner attained a maximum mandated salary of Twenty-six hundred dollars in September, 1931, and received that salary until September, 1936. That from September, 1936, until September, 1939, the salaries were reduced but that the difference between the twenty-six hundred which the petitioner should have received and the amount actually paid

him was made up by the Board of Education until September, 1939." The affidavits, attached to and supporting the petition herein, allege that the affiants were, at all times, vocational teachers and that as such each affiant had attained and was enjoying a maximum mandated salary of $2,600 per year when their salaries were reduced to $2,500 by the Board in 1939. The answer does not deny that these twelve teachers had attained maximum mandated salaries of $2,600 when their salaries were reduced to $2,500 in 1939. The answer, however, denies that the affiants were vocational teachers at any time and the answer affirmatively alleges that they were never so classified on the Board's salary schedules. This affirmative allegation is deemed to have been admitted by the petitioner and his associates. Hence the finding of the Commissioner of Education that the petitioner and his associates had never been listed on the salary schedules as vocational teachers has not been challenged in this proceeding and there is no issue here as to that question.

What is the meaning of the term " mandated salary? " We interpret a mandated salary to mean a mandatory salary, a salary required to be fixed at the particular amount by some provision of law. When the petitioner and his associates assumed their duties as teachers, the Board had in effect salary schedules as required by section 884 of the Education Law fixing the salaries of the members of the teaching staff in Buffalo. On these schedules, the Board listed the petitioner and his associates and fixed their salaries on the same basis as the salaries fixed in the schedules adopted for vocational teachers but the Board did not list them on the vocational teachers schedules. These schedules were filed with the Department of Education in Albany. Salary schedules were adopted annually by the Board and filed with the Commissioner of Education at Albany. The petitioner and his associates were similarly listed on each of these salary schedules.

Until their salaries were reduced in 1939, the petitioner and his associates had made no complaint as to how they had been listed on the schedules adopted by the Board and there is no proof that they knew how the Board had listed them until their salaries had been reduced in 1939. Hence they did not waive any rights they may have possessed in that respect.

We are unable to see, under the circumstances, what difference it makes whether the petitioner and his associates were listed or classified either as academic teachers, or as a special class of academic teachers, or as vocational teachers. The important fact is that the Board fixed their salaries as if they

had been vocational teachers. The Board now claims that it was in error in so doing and that the reduction in salaries made by it in 1939 was to correct that error. The proof indicates that the Board placed the petitioner on the same pay level as the vocational teachers because the petitioner and his associates were obliged to teach from eight-twenty A. M. to two-thirty P. M. with one-half hour off for lunch while the academic high school teachers were obliged to teach only from eight forty-five A. M. to two-thirty P. M. with one-half hour off for lunch. The teaching day of the petitioner and his associates was the same length as the teaching day of the vocational teachers. The petitioner and his associates passed the examinations held by the Board for vocational teachers. Hence they were qualified to teach vocational subjects. The Board has made no criticism in respect to the teaching ability of the petitioner or of any of his associates. The longer teaching day justified the Board, in office at the time, in giving to the petitioner and his associates more compensation than the academic teachers in the high schools were receiving.

The petitioner taught manual training and shop subjects, and nothing else, from 1922 to 1931, inclusive. He reached and received the maximum salary of $2,600 in 1931, and, under the decision of the Commissioner of Education, he was entitled to be listed as a vocational teacher. So far as appears, the Board has not re-examined into the question of classification as suggested by the Commissioner of Education in his decision. A re-examination of that subject might convince the Board that the petitioner, at least, would be entitled to a rating as a vocational teacher. The salaries as fixed in the salary schedules adopted by the Board, up to September, 1939, and accepted by the petitioner and his associates, constituted contracts between them and the Board and the salaries thus agreed upon could not legally be reduced without the consent of the petitioner and his associates, which consent they never have given. (Education Law, § 884; *Matter of Moses* v. *Board of Education*, 245 N. Y. 106, 108.)

The petitioner and his associates had a clear legal right to the relief asked for and the order appealed from should be affirmed, without costs of this appeal to either party.

All concur. Present — CUNNINGHAM, TAYLOR, DOWLING, HARRIS and McCURN, JJ.

Order affirmed, without costs of this appeal to either party.