In the Matter of the Application of ARTHUR L. SHEVLIN and 141 Others, as Set Forth in the Petition Herein, Petitioners, for an Order under Article 78 of the Civil Practice Act against FIORELLO H. LAGUARDIA, Chairman, FRANK J. TAYLOR and Others, Members Constutiting the Board of Estimate and Apportionment of the City of New York, Defendants.

Supreme Court, Special Term, New York County, February 7, 1938.

474

*Albert DeRoode*, for the petitioners.

*Paul Windels, Corporation Counsel [Seymour B. Quel* of counsel], for the defendants.

McLAUGHLIN (CHARLES B.), J. This is an application by 142 attendants of the Supreme Court in the First Judicial District and of the Appellate Division, First Department, for an order directing and commanding the board of estimate and apportionment of the city of New York " to modify and change or otherwise make provision for the inclusion in the Budget of the City of New York for the year 1938 and for tax levy based thereupon of the sum of $70,671 for the payment to petitioners " of certain arrearages claimed to be due them. By stipulation of the parties entered into on December 16, 1937, in connection with an adjournment of the hearing of the application, it was agreed that " the City of New York and any successor body to the present Board of Estimate and Apportionment of the City of New York will comply with any final order herein as fully as would the present Board of Estimate and Apportionment comply with any such order were such Board to be continued after January 1, 1938."

Under the provisions of section 348 of the Judiciary Law the salaries of the petitioners "shall be fixed by the justices of the Appellate Division of the First Department and the justices of the Supreme Court of the First Judicial District or a majority of them and with the consent of the board of estimate and apportionment of the city of New York at a sum not less than three thousand dollars per annum." During the years 1933, 1934 and 1935, however, the city of New York failed and refused to pay to petitioners salaries at the rate of $3,000 per year, but instead paid them only at the rate of $2,810 per year. The aggregate amount of the differences in the salaries of the petitioners between $3,000 per year for each petitioner and the amount paid to each petitioner by the city of New York is $70,671.

The first defense interposed on behalf of the city alleges that the justices of the Appellate Division and of the Supreme Court, together with the board of estimate and apportionment, fixed the salaries of the petitioners at $2,810 per year during the years 1933, 1934 and 1935, that being the amount paid to the petitioners. This defense is insufficient in view of the fact that section 348 of the Judiciary Law fixes a minimum salary of $3,000 per annum, below which the justices of the court and the board of estimate and apportionment of the city of New York had no power to reduce attendants' salaries. The State Legislature at no time reduced the minimum of $3,000 per annum fixed in section 348 of the Judiciary Law. Concededly, section 2 of chapter 637 of the Laws of 1932, the so-called Economy Act, did not affect the salaries of the petitioners, for that section expressly excepted from its provisions "the salaries or compensation of any officer, employee or other person in the following State courts: the Appellate Divisions of the Supreme Court, First and Second Departments, the Supreme Court within the First Judicial District." As the salaries of the petitioners could not validly be reduced below $3,000 per annum except by act of the Legislature, and as no act authorizing such reductions has ever been enacted by the Legislature, the first defense is clearly invalid.

The second defense is based upon the city's contention that the failure to commence the present proceeding within four months after the city's failure to pay petitioners the higher amounts claimed by them bars them from relief, in view of the provisions of section 1286 of the Civil Practice Act (added by Laws of 1937, chap. 526). The rights of the petitioners are, however, unaffected by the recent enactment of section 1286 of the Civil Practice Act, since that section contains no provision giving those possessing rights at the time of its taking effect a reasonable period within

which to prosecute their claims. It is well settled that it is not sufficient that an act affords a reasonable interval between its passage or becoming a law and its taking effect. (*Gilbert* v. *Ackerman*, 159 N. Y. 118; *People* v. *Cohen*, 245 id. 419, 421.)

In determining whether the delay of the petitioners in asserting their rights is fatal, the provisions of section 1286 of the Civil Practice Act must be disregarded and the situation must be treated as if that section had not been enacted. While prior to the passage of section 1286 of the Civil Practice Act laches was a defense to mandamus proceedings involving reinstatement to office after the office had been filled by another, it was no defense to an application for the payment of money unlawfully withheld which did not involve any question of reinstatement or any similar circumstances. (*Matter of Ramsay* v. *Lantry*, 123 App. Div. 71; *People ex rel. Jennings* v. *Johnson*, 161 id. 625, 628, 629.) The claim of the present petitioners represents a fixed indebtedness due them for salary incidental to the office which they legally hold. (*Dodge* v. *City of New York*, 252 App. Div. 631.) The city's failure to meet this obligation when it became due may not be obviated by the petitioners' failure to start a proceeding within a reasonable time. The wrong is a continuing one, and a continuing duty rests upon the city until the duty is performed. In *People ex rel. Cropsey* v. *Hylan* (199 App. Div. 218; affd., 232 N. Y. 601) the court said (p. 221): " Appellants contend at the outset that, even if they had no discretion in the premises, and it was their mandatory duty to provide for these salaries as requested by petitioners, this proceeding was instituted too late in that it was instituted after they were precluded by the express provisions of section 226 from making any increases in the tentative or final budget. I deem it quite clear that it was the mandatory duty of the appellants to provide in the budget for these salaries as fixed by the petitioners, and remains their continuing duty until performed, and that mandamus is the appropriate remedy to compel performance." The court accordingly holds that the second defense, whether based upon the provisions of section 1286 of the Civil Practice Act or treated as one of laches, is insufficient.

The third defense is predicated upon the failure of many petitioners to note their protests in signing receipts for the reduced salaries. It seems to be now settled that there is no merit to this contention. In the recent case of *Dodge* v. *City of New York* (*supra*) the same defense was overruled. Mr. Justice GLENNON, writing for the court, said: " The city next contends that the failure of the plaintiff to note a protest upon his payroll receipts during the period involved in this controversy constitutes a bar to maintaining his claim,

and is, under the provisions of section 149 of the Greater New York Charter, an accord and satisfaction. This contention finds no support in the authorities. In fact, they are to the contrary. They definitely hold that, where a statute fixes the salary of a State officer it belongs to him as an incident to the office, and he cannot be compelled under any circumstances to accept a lesser sum." The court cited various authorities and quoted the following language from the opinion in *Grant* v. *City of Rochester* (79 App. Div. 460; affd., 175 N. Y. 473, on opinion below): " The fact also that the plaintiff, as commissioner of public works furnished to the board of estimate and apportionment, which he was required by law to do, a statement of the amount which in his opinion should be appropriated for his department during the year 1901, including in it his salary at the reduced rate fixed by the common council and the acceptance of the check of the treasurer each month for that amount, stated to be in full, is without effect, for under the rule the doctrine of estoppel or waiver can have no application." The third defense is accordingly held to be insufficient.

The fourth defense alleges that the petitioners have a complete and adequate remedy at law for the relief sought. This defense is overruled. Part of the relief sought by the petitioners is an order directing the board of estimate and apportionment to modify the budget for 1938 so as to provide for the payment of the moneys alleged to have been illegally deducted from their salaries. Unless such relief were applied for and granted, an action at law for the amounts improperly deducted might fail. Thus, in *Matter of Flaherty* v. *Craig* (226 N. Y. 76), the necessity of providing for payment in the budget was held to bar a proceeding to compel the comptroller to audit and allow compensation which had been legally fixed. In *People ex rel. O'Loughlin* v. *Prendergast* (219 N. Y. 377, at p. 382) the Court of Appeals said: " The appointee is not suing for salary; the officer who appointed him is asking for an appropriation which will make provision for the salary. The board of estimate was requested in 1913 and again in 1914 to make this appropriation. It refused to do so. Its refusal was unlawful, and it has remained charged with the continuing duty of complying with the demand. The mandamus compels the performance of a duty which ought to have been fulfilled before. Its effect is to make the appropriation, and thereby supply the fund from which payment may be obtained. The appropriation, being made, relates back to the time when it ought to have been made." Since the relief here sought is similar to that applied for in the case last cited, it would seem that no adequate remedy at law exists in the first instance in favor of the petitioners, and that mandamus, or its present equivalent, is a proper remedy.

The fifth defense is based upon the failure to present to the comptroller a demand or claim for the amounts improperly deducted from the petitioners' salaries, as required, according to the city, by the provisions of section 261 of the former Greater New York Charter. In view of the reasoning adopted by the authorities previously referred to, which held that failure to note a protest in accepting reduced amounts does not bar applications for the payment of the sums illegally deducted, this court is of the opinion that the provisions of section 261 of the former charter were not intended to apply to a case such as this where the city, in violation of the Judiciary Law, wrongfully and illegally withholds part of the salaries of State court employees. It was never contemplated that section 261 should have any application to the amounts to be included in the budget to meet salaries fixed by statute. There was no amount which could be " adjusted " by the comptroller, within the meaning of said section. The comptroller would have had no right to make payment of the arrears due, since there was no provision in the budget for the payment of the same. Logically, a proper procedure would require that the budget be increased so as to include the sums to be paid to the petitioners before presentation to the comptroller of claims for payment.

The sixth defense of *res adjudicata* can only apply to one of the petitioners, Shevlin, and then only as to the years 1933 and 1934, since the proceeding brought by him in Queens, upon which the city relies, could not bind the other petitioners, who were not parties thereto. Said proceeding was not a representative one. It related only to Shevlin's salary for the years 1933 and 1934.

As all the defenses are insufficient except as to the deductions from Shevlin's salary for the years 1933 and 1934, the present application is denied as to the deductions from Shevlin's salary for the years 1933 and 1934, and otherwise granted. The motion to strike out the defenses is also granted to the extent indicated. Settle order.