In the Matter of THOMAS F. POWERS et al., Petitioners, against FIORELLO H. LA GUARDIA et al., Constituting the Board of Estimate of the City of New York, et al., Respondents.

Supreme Court, Special Term, New York County, July 24, 1943.

*H. Eliot Kaplan* for petitioners.

*Ignatius M. Wilkinson, Corporation Counsel (Seymour B. Quel* and *Charlotte Orr* of counsel), for respondents.

EDER, J.   Application under article .78 of the Civil Practice Act.   The relief sought is the equivalent of a peremptory mandamus order to direct the respondents to pay petitioners accrued and future increments of salary by virtue of the provisions of sections 40 and 41 of the Civil Service Law.

Petitioners are employees holding a position in one of the services or occupational groups included in said section 40; by the provisions of section 41 of that Law it is provided that such employees shall be entitled to annual increments as therein set forth; petitioners have been employed in the Transit Commission in the city of New York down to the time of its recent merger with the Public Service Commission.

The petitioners received such increments in 1938; by a special legislative enactment (L. 1939, ch. 910) payment of increments was suspended for the year 1939; they were resumed in 1940 for all State employees; the Transit Commission (Public Service Law, § 4-b) was abolished by chapter 170 of the Laws of 1943, effective April 1, 1943. The City of New York, however, has refused to grant increments to the petitioners and others similarly situated, taking the position that they are no longer entitled to receive increments in view of the passage of chapter 246 of the Laws of 1940, effective July 1, 1940 (amdg. Public Service Law, § 14, subd. 2), contending that this enactment vested control of petitioners' salaries in the City, subject to the budget-making powers and procedure prescribed by the New York City Charter (1938), and that in consequence said sections 40 and 41 of the Civil Service Law are inapplicable to the petitioners. The instant proceeding therefore involves the right of the petitioners to back increments from July 1, 1940, to March 31, 1943.

The proceeding herein was instituted on October 30, 1942. In addition to the contention just above referred to, two additional points are raised by the respondents which require answer and they are the following:

(1) That this proceeding was not brought within the four months' statutory period prescribed by section 1286 of the Civil Practice Act and is therefore barred;

(2) That the petitioners cannot in any case recover for any period for which they failed to sign the pay rolls under protest.

I shall consider these claims first. In support of the claim that the proceeding is barred by the aforementioned Statute of Limitations the respondents maintain that the City budgets for each of the fiscal years in question were finally adopted on June 15th of each year as provided by section 126 of the New York City Charter; that petitioners claim that they should have received increments for the fiscal years commencing July 1, 1940, July 1, 1941, and July 1, 1942; that under these circumstances they cannot recover herein irrespective of the merits of the claims, in that said section 1286 of the Civil Practice Act

provides that a proceeding under article 78 thereof must be commenced within four months after the determination to be reviewed becomes final and binding; that the budget for each of the fiscal years for which the petitioners claim back increments was adopted more than four months before the institution of the present proceeding and that the same is in consequence barred.

A contention of like nature was advanced in *Matter of Shevlin* v. *LaGuardia* (166 Misc. 473, 476; mod. on other grounds 254 App. Div. 922; affd. as mod. without opinion 279 N. Y. 649) and in *Matter of Moses* v. *Board of Education of City of Syracuse* (127 Misc. 477, 483, affd. 218 App. Div. 811, revd. on other grounds 245 N. Y. 106). Such claim was overruled and held untenable for the reason that there is a continuing duty on the part of the City to pay the salary fixed by law and that, therefore, the four months' provision within which to institute a mandamus proceeding to compel payment was without application.

As to the point that the petitioners' failure to sign the pay rolls under protest bars a recovery for the periods involved (Administrative Code of the City of New York, § 93c–2.0; L. 1937, ch. 929), it is a tenable contention, applicable, however, only as to any period prior to the commencement of action for which petitioners failed to sign pay rolls under protest; but from the time of the institution of this proceeding no further protest of pay rolls was legally necessary, for the commencement thereof was in itself constructive protest of pay rolls thereafter submitted, and as to all payments due to the petitioners after the commencement of this proceeding on October 30, 1942, no protest was necessary to preserve the petitioners' right to recover the full salaries due them under the Civil Service Law. The theory upon which recovery is barred where there is no signing of the pay roll under protest is that it is an accord and satisfaction, as expressly declared by said section 93c–2.0 of the Administrative Code; obviously, where a lawsuit is instituted there can never be " accord and satisfaction ", which failure to protest pay rolls contemplates.

However, in the consideration of the claims and the ultimate determination made herein, due allowance will be made and recovery will be denied for any period during which the peti-

tioners failed to sign the pay roll under protest as shown by the schedules submitted by the respondents and the accuracy of which I understand is not questioned by the petitioners, except where held to be unnecessary.

The Transit Commission was created by chapter 134 of the Laws of 1921 (Public Service Law, § 4-b *et seq.*); it was given power of supervision and duties with relation to railroads, street railroads and omnibus lines within the city; under that statute the salaries of the commissioners, the secretary and the counsel of the Transit Commission were required to be paid by the State, but the salaries of other employees were required to be paid by the City; that enactment further empowered the Transit Commission to fix the salaries of subordinate employees and required the City to pay a lump sum therefor in accordance with the certification of the Transit Commission.

Section 14 of the Public Service Law, entitled " Payment of salaries and expenses ", in subdivision 1 thereof, provides that all salaries and expenses of the Public Service Commission shall be paid monthly from the State treasury upon the audit and warrant of the Comptroller out of the funds provided therefor; and in subdivision 2, there is a like provision to the effect that the salaries of the commissioners, secretary and counsel of the Transit Commission shall be paid monthly from the State treasury upon the audit and warrant of the Comptroller out of the funds provided therefor. It is then further provided that — " All other salaries and expenses of the transit commission shall be chargeable to the city in which such commission has jurisdiction, and shall be audited and paid as follows: * * *."

There then follows the direction that an appropriation shall be made by the Board of Estimate and Apportionment or other board or public body vested with power to make the same, or having the duty to do so, and there follows the enjoinment that " Such appropriation shall be made forthwith upon presentation of such a requisition without revision or reduction and without the imposition of any conditions or limitations by such board or body, and such appropriation by it is hereby declared to be a ministerial act."

Chapter 246 of the Laws of 1940, effective July 1, 1940, amended said subdivision 2 of said section 14 of the Public Service Law in a material, important degree; it made a very substantial change, and the relevant portion thereof now reads as follows: " All other salaries and expenses of the transit commission shall be chargeable to the city in which such com-

mission has jurisdiction, shall be *subject to the budget-making powers and procedure* and shall be audited and paid *in the same manner as are the expenses of an agency of the city as prescribed in the charter thereof.*" (Italics supplied.)

Upon comparison of this subdivision 2, before and after amendment, it will be found that the language of the subdivision is the same, except the italicized matter which represents the change, insofar as this particularly quoted portion thereof is concerned. There is also the further very important feature of the elimination of that part of the subdivision which vested the power of fixation of the amount of expenditures in the Transit Commission, and made it " *subject to the budget-making powers and procedure* " of the city, to be audited and paid " in the same manner as are the expenses of an agency of the city as prescribed in the charter thereof."

The Transit Commission, later continued as the Board of Transportation (Public Service Law, §§ 138, 143; now Rapid Transit Law, §§ 101, 108), while a State instrumentality, functioned here as a City agency, its expenses being paid by the City out of the City treasury. (*Ferdinand* v. *Moses,* 26 N. Y. S. 2d 382, affd. 262 App. Div. 1001, and cases there cited.)

Although the petitioners are State Civil Service appointees, insofar as they were employed in the Transit Commission, it is the respondents' contention that they must be regarded as coming within the category of City employees as respects the fixation of their salaries and therefore subject to and governed by the action of the Board of Estimate in that connection. Chapter 3 of the New York City Charter (1938) — " Board of Estimate " — section 67 of which is entitled " Salaries to be fixed by board ", reads as follows: " The power is vested in, and it shall be the duty of the board of estimate, *except as otherwise provided in this charter or by statute,* to fix the salary of every officer or person whose compensation is paid from the city treasury, other than day laborers." (Italics supplied.)

Section 40 of the Civil Service Law, among other things, provides: " The annual salaries of all positions, other than temporary, part-time or seasonal positions, in the competitive and non-competitive classes of the classified service of the state of New York, except the civil divisions thereof and *except those positions the salaries of which are otherwise fixed by statute,* shall be at the following rates: * * *." (Italics supplied.)

These phrases, " except as otherwise provided in this charter or by statute," and " except those positions the salaries of which are otherwise fixed by statute," are thought by the peti-

tioners to indicate that while section 67 of the City Charter vests power in the Board of Estimate to fix salaries, the exception therein " except as otherwise provided in this charter *or by statute,*" eliminates State employees whose salaries are fixed by statute even though they be employed in an agency of the City. If there were any measure of force to this viewpoint, the respondents urge that it becomes untenable here by virtue of the claimed effect of chapter 246 of the Laws of 1940, which amended subdivision 2 of section 14 of the Public Service Law in providing that all other salaries and expenses of the Transit Commission shall be subject to the budget-making powers and procedure of the City and be audited and paid in the same manner as are the expenses of an agency of the City as prescribed in the Charter thereof.

With the passage of chapter 246 of the Laws of 1940, the Transit Commission was shorn of all its power to fix, arbitrarily or otherwise, the amount of the appropriation, which it theretofore could do without the right or power of the City to revise or reduce the same, and that power was transferred to the City and vested in the Board of Estimate of the City; and respondents claim that by the enactment of chapter 246 it was the legislative intent to transfer to the City the power to fix the salaries of all subordinate employees of the Transit Commission, for prior to 1940 the City was required to pay the salaries of such subordinate employees of the Transit Commission but had no control over the fixation of their salaries, an extraordinary situation; that there was much criticism over this unusual condition and there was constant agitation for the passage of legislation which would divest the Transit Commission of this power of fixation of such salaries and transfer that power to the City, where it was maintained (and with much merit) it properly belonged. Success finally crowned the efforts of the protagonists of this proposed reform by the enactment of chapter 246 of the Laws of 1940.

Conceding all this, nonetheless, such divestment of the Transit Commission's power to fix salaries and the transfer of this power to the City by virtue of the amendment to subdivision 2 of section 14 of the Public Service Law did not carry with it an over-all right or power on the part of the City to change the rate of compensation specifically fixed by sections 40 and 41 of the Civil Service Law for State employees.

What this legislation did was to permit the City on and after July 1, 1940, to fix the rate of compensation of employees of the Transit Commission other than in those instances where

the employee's compensation was already fixed by some superior law; this, I think, is evidenced by and quite apparent from the exceptionary clauses in sections 67 and 68 of the City Charter and in section 40 of the Civil Service Law; these restrictions and limitations on the power to alter or change the rate of compensation of State employees as fixed by the State statute, and with respect to the creation, abolition or modification of positions and grades of persons paid from the City treasury, were, in my opinion, designed and intended to secure to such State employees the compensation awarded to them by express statute and to protect them against any diminution thereof.

It must be presumed that when the Legislature amended subdivision 2 of section 14 of the Public Service Law and authorized the new New York City Charter (1938), it was fully cognizant of the rate of compensation fixed by section 40 of the Civil Service Law for such employees and of the exceptions therein contained, and the inclusion of the exceptions in sections 67 and 68 of the City Charter when transferring to the City the power of the fixation of salaries and the power to create, abolish or modify positions and grades of persons paid from the City treasury must, I think, be regarded and taken as an indication of the legislative intent to continue the protection and security of State employees in respect of rates of compensation accorded to them by section 40 of the Civil Service Law; else the incorporation in section 67 of the City Charter of the exceptionary clause appears to be without meaning or purpose.

The respondents also contend that even if the petitioners are State employees, nevertheless the Legislature could validly delegate to the City the right to fix the salaries of the petitioners as in the case of other City agencies and that it did so by the enactment of chapter 246 of the Laws of 1940. This general proposition is true enough; there is no constitutional inhibition against the Legislature's delegating administrative functions, powers and duties to a local government or agency as distinct from delegating to it legislative powers; that assertion is supported by a plenitude of decided cases and the point is incontestable; citation of precedents upon a topic so familiar might be thought an indulgence in vanity. The power to fix salaries, if delegated, was burdened with a limitation and condition by the incorporation in section 67 of the City Charter of the mentioned exceptionary clause, and I am therefore unable to apprehend the force or effect of this premise.

In providing that all salaries and expenses of the Transit Commission shall be subject to the budget-making powers of the City, the effect of chapter 246 of the Laws of 1940 was to vest

in the City the right to estimate the probable expenditures of the Transit Commission for the ensuing year and to control the appropriations thereof, where theretofore no such right or power existed, and when adopted as provided by law to become the appropriation; but it was not intended by the granting to the City of this budget-making power to authorize the Board of Estimate to change or diminish the rate of compensation of State employees in the service of the Transit Commission in New York City, contrary to the express provisions of the State law fixing their rate of compensation. If it was intended that the City should possess such power in general, then there was no need to incorporate the mentioned exception in the City Charter.

The petitioners are entitled to all payments due to them after the commencement of this proceeding on October 30, 1942, and, in addition thereto, to all payments for which they signed the pay rolls under protest, as shown on the schedules submitted by the respondents. Application granted as indicated. Settle order.