In the Matter of GEORGE L. DONNELLAN et al., Petitioners, against WILLIAM O'DWYER et al., Constituting the Board of Estimate of the City of New York, Respondents.

Supreme Court, Special Term, New York County, December 4, 1946.

*Abraham J. Halprin* for petitioners.

*John J. Bennett, Corporation Counsel* (*Morris Shapiro* and *Harry Hollander* of counsel), for respondents.

CHURCH, J. Petitioners, the Judges of the Court of General Sessions, in a proceeding under article 78 of the Civil Practice Act, applied for an order to compel the Board of Estimate of the City of New York to appropriate sufficient money to pay to each of them additional compensation at the rate of $1,000 per annum from April 1, 1945, at least until March 31, 1947, pursuant to the provisions of chapter 303 of the Laws of 1945 and chapter 276 of the Laws of 1946, and section 50 of the Code of Criminal Procedure.

The petitioners contend that they are entitled to additional compensation of $1,000 per annum, on the ground that the first two statutes, awarding additional war emergency compensation of $1,000 per annum from April 1, 1945, are applicable to them and that section 50 of the Code of Criminal Procedure, providing for an equalization of their compensation with that of the Justices of the Supreme Court for the First Judicial

District, requires the Board of Estimate to appropriate an additional $1,000 per annum to be paid to each of them since the Supreme Court Justices are receiving such additional amount from the State of New York by way of war emergency compensation.

Each of the petitioners is a Judge of the Court of General Sessions of the County of New York and each has been paid salary at the rate of $25,000 per annum from April 1, 1945, to date.

By chapter 303 of the Laws of 1945 the State Legislature provided, in substance, that during the fiscal year April 1, 1945, to March 31, 1946, there should be paid to judicial officers and employees of the State certain additional war emergency compensation, in accordance with percentage rates fixed by the act, which additional compensation should in no event exceed $1,000 per annum. Section 1 provided that additional war emergency compensation " shall be paid periodically to all state officers and employees to whom the provisions of this act are applicable, as hereinafter provided, * * * " of which admittedly a Justice of the Supreme Court is one.

Chapter 276 of the Laws of 1946 extended the period during which the additional war emergency compensation should be paid to March 31, 1947.

On May 9, 1945, petitioners addressed to the members of the Board of Estimate a communication, which requested the Board of Estimate to appropriate the additional sum of $1,000 per annum to be paid to each of the petitioners as Judges of the Court of General Sessions from April 1, 1945, so as to equalize their compensation with the compensation of the Justices of the Supreme Court, First Judicial District. On May 14, 1945, the communication was forwarded by the petitioners to the Comptroller of the City of New York, but not otherwise to any other individual who is a member of the Board of Estimate.

The budget for the fiscal year 1945–1946 was adopted by the Board of Estimate on or about April 27, 1945, certified by the Mayor and submitted to the Council on or about May 21, 1945, certified by the President of the Council, as adopted by that body, on or about May 22, 1945, and certified by the Mayor, the Comptroller and the City Clerk as the budget for the fiscal year 1945–1946 on or about June 15, 1945. The budget, as finally adopted, did not appropriate the additional $1,000 demanded by the petitioners nor was that sum paid to any of them during the fiscal year which ended on June 30, 1946, but

the respondents never formally, informally, in writing or orally, advised the petitioners that their demand would be refused, or that they would not act upon it. On July 29, 1946, during the period from April 1, 1946, to March 31, 1947, under the second statute for additional compensation, the petitioners made another demand and likewise there was no notice of refusal by the respondents but merely a failure to act.

This proceeding was commenced on November 9, 1946, more than four months after the date of the first demand, but within four months from the date of the demand for the additional compensation under the second statutory period.

All the material allegations of fact in the petition (excluding the denials of inferences or conclusions of fact and conclusions of law based thereon) have been admitted but the answer of the respondents sets up four affirmative defenses.

(1) Chapter 303 of the Laws of 1945 and chapter 276 of the Laws of 1946 by their terms apply specifically and exclusively to State judicial [sic] officers and employees whose compensation is paid out of the State Treasury in whole or in part and that petitioners receiving their entire compensation from the City of New York are not entitled to the additional compensation.

(2) The intent and purpose of subdivision (b) of section 50 of the Code of Criminal Procedure is to equalize the salary or compensation of the Judges of the Court of General Sessions with the *basic* salary or compensation of the Justices of the Supreme Court of the First Judicial District; the *basic* salary of such a justice has throughout the two statutory periods remained the same, namely, $25,000 per annum and hence the petitioners have been receiving full equalization with the *basic* salary of Justices of the Supreme Court.

(3) The additional war emergency compensation received by Justices of the Supreme Court is not a part of the *basic* salary or compensation and is wholly temporary, and if the city is compelled to pay the petitioners the additional compensation, the city may be without power, under the State Constitution prohibiting the reduction of salaries of the petitioners, to terminate the payment of the additional compensation during their respective terms of office, under chapter 303 of the Laws of 1945 and chapter 276 of the Laws of 1946, the latter terminating March 31, 1947, and therefore the effect of granting the relief prayed for in the petition " might be to increase the *basic* salary of the petitioners, and therefore they would receive salary

and compensation in excess of that received by the Justices of the Supreme Court for the First Judicial District contrary to the provisions of Section 50 of the Code of Criminal Procedure." (Emphasis on the word *basic* in each instance ours.)

(4) More than four months. have elapsed since the demand for, and refusal of the appropriation and payment of the additional compensation, and therefore this proceeding has not been commenced within the time limited by the provisions of section 1286 of the Civil Practice Act, and therefore this proceeding is barred by the short Statute of Limitations.

Chapter 303 of the Laws of 1945 in part expressly provided: " Section 1. For services rendered during the fiscal year commencing on April first, nineteen hundred forty-five and ending March thirty-first, nineteen hundred forty-six, there shall be paid periodically to all state officers and employees to whom the provisions of this act are applicable, as hereinafter provided, additional war emergency compensation, to be computed upon the compensation of such officers and employees otherwise payable during such period, as follows: * * * (5) At the rate of ten per centum of such compensation if the compensation otherwise payable is four thousand dollars per annum or more, provided that the additional war emergency compensation paid pursuant to the provisions of this act shall, in no event exceed one thousand dollars per annum."

Chapter 276 of the Laws of 1946 in part expressly provided: " Section 1. For services rendered during the fiscal year commencing on April first, nineteen hundred forty-six and ending March thirty-first, nineteen hundred forty-seven, there shall be paid periodically to all state officers and employees to whom the provisions of this act are applicable, as hereinafter provided, additional emergency compensation, to be computed upon the compensation of such officers and employees otherwise payable during such period as follows: * * * (5) At the rate of fourteen per centum of such compensation if the compensation otherwise payable is four thousand dollars per annum or more, provided, that the additional emergency compensation paid pursuant to the provisions of this act shall in no event exceed one thousand dollars per annum."

Both the act of 1945 and the act of 1946 were enacted with legislative notice and knowledge that a Justice of the Supreme Court is a State officer whose compensation must be prescribed by the Legislature, subject to the constitutional provision that his compensation shall not be diminished during his term of

office, and if resident in the First Judicial District, that he receives this salary partly from the City of New York ($10,000), and partly from the State of New York ($15,000); that the Legislature may confer limited authority to pay additional compensation to such justices and that power has been recognized and exercised since 1852 (see *Matter of Benvenga* v. *La Guardia,* 182 Misc. 507, affd. 268 App. Div. 566, which was affd. 294 N. Y. 526).

Both the acts were enacted with legislative notice and knowledge that the Judges of the Court of General Sessions receive their entire compensation from the City of New York, and that the pre-existing equalization statute found in subdivision (b) of section 50 of the Code of Criminal Procedure in part pertinently provides: " Each judge of the court of general sessions as such judge shall receive in equal monthly instalments a yearly salary equal in amount to the *inclusive aggregate salary, compensation, or salary and compensation,* paid to a justice of the supreme court in the first judicial district, for his services as such judge, *so as to equalize and maintain a continuing equalization of the gross salary* paid to such justices and judges. No other compensation shall be allowed to any such judge." (Emphasis ours.)

The common sense of any layman or lawyer or judge instinctively rejects as false the proposition, theoretical or practical, that a Judge of the Court of General Sessions now *receiving $25,000 yearly* salary is receiving " a yearly salary equal in amount to the inclusive aggregate salary, compensation, or salary and compensation, paid to a Justice of the supreme court," who is receiving $26,000 yearly " inclusive aggregate salary, compensation, or salary and compensation ", or " gross salary ". The clear legislative intent of section 50 was, as is expressly stated in itself, " so as to equalize and maintain a continuing equalization of the gross salary paid to such justices and judges." Knowing that the Judges of General Sessions receive their compensation solely from city funds, whether they be State or county or city officers, the Legislature has mandatorily directed by section 50 that the city raise, appropriate and pay the same gross salary or compensation to a Judge of the Court of General Sessions as is paid to a Justice of the Supreme Court in the First Judicial District, even though the additional compensation may be temporary and irrespective of the sources of the funds from which such compensation shall be paid. The additional compensation is by its terms under the existing statutes payable only until March 31,

1947, and if the time is not extended and if payments to Justices of the Supreme Court cease, then by the express terms of section 50 " No other compensation shall be allowed to any such judge ", i.e., a Judge of the Court of General Sessions, than that is paid to a Justice of the Supreme Court in the First Judicial District.* The levying, raising, appropriation and payment of the additional compensation out of local funds shall be upon the same basis and conditions specified in the acts of 1945 and 1946, *pari passu,* with the additional compensation payable to the Justices of the Supreme Court. These acts merely fix, in conjunction with the mandatory provisions previously enacted by the Legislature in section 50 of the Code of Criminal Procedure directing equalization not merely as to *basic salary* but also additional salary or compensation, the items making up " the inclusive aggregate salary, compensation, or salary and compensation ", " *the gross salary.*" (Emphasis ours.) The equalization of " gross salary " cannot be construed to mean equalization of " basic salary ".

Even if section 4 of chapter 303 of the Laws of 1945 were applicable, it would not be decisive for the respondents. It merely provides that, for certain limited and specific purposes, the additional compensation shall not be deemed to change the basic compensation of the recipient. For example, it does not change the basic compensation of a recipient for the purpose of " determining the right to any increase of salary or any salary increment." It is clear that that portion of section 4, which states " for the purpose of determining the right to any increase of salary or any salary increment " does not apply to Supreme Court Justices. Their salary is fixed by law and is not increased by reason of length of service or other factors governing other State officers or employees.

Section 6 of the same Act and similar provisions in the act of 1946 are merely details for the audit, warrant, appropriation and payment of the additional compensation in the instances in which they are to be made out of State funds.

Respondents urge that this proceeding is barred by the four months' Statute of Limitations provided for in section 1286 of the Civil Practice Act. This argument is based upon the communication dated March 9, 1945, addressed to respondents, and sent on May 14, 1945, to the Comptroller of the City of New York.

---

* The petitioners through their counsel have agreed to stipulate that the additional compensation shall be received by them upon the same basis as it is paid to the Justices of the Supreme Court.

Prior to and since the enactment of section 1286 of the Civil Practice Act, the four months' Statute of Limitations provided therein was and is not applicable to a continuing mandatory duty, such as is imposed upon respondents by virtue of section 50 of the Code of Criminal Procedure.

Section 1286 of the Civil Practice Act must be read in the light of the law as it existed immediately prior to its enactment. At that time, the failure to institute a mandamus proceeding within four months was considered as laches barring the proceeding.

Section 1286 merely codified that rule of law. (See *Matter of Curtin* v. *Dorman*, 293 N. Y. 505, 509.)

In *People ex rel. O'Loughlin* v. *Prendergast* (219 N. Y. 377) the performance of a continuing mandatory duty imposed by law was compelled where the demands for performance were made and refused more than two years before the proceeding was commenced. There, the Register of Kings County instituted a mandamus proceeding to compel the Board of Estimate to appropriate moneys for salaries of clerks appointed by the register under the statute. In June, 1913, September, 1913, and again in October, 1914, the register requested the board to make the necessary appropriation, which demands were refused. On September 15, 1914, one Wilson was appointed clerk. He served until January 29, 1915, when he resigned. Thereafter, and more than two years after the first demand and refusal, the proceeding was instituted. In sustaining the writ and in rejecting the plea of laches and the Statute of Limitations, Judge CARDOZO stated (p. 382) as follows: " The board of estimate was requested in 1913 and again in 1914 to make this appropriation. It refused to do so. Its refusal was unlawful, and it has remained charged with the continuing duty of complying with the demand. The mandamus compels the performance of a duty which ought to have been fulfilled before. Its effect is to make the appropriation, and thereby supply the fund from which payment may be obtained. The appropriation, being made, relates back to the time when it ought to have been made.''

Again, the law is stated in *Matter of Shevlin* v. *LaGuardia* (166 Misc. 473, mod. on other grounds 254 App. Div. 922, which was affd. 279 N. Y. 649). The Special Term at page 476 stated as follows: " In determining whether the delay of the petitioners in asserting their rights is fatal, the provisions of section 1286 of the Civil Practice Act must be disregarded and the situation

must be treated as if that section had not been enacted. While prior to the passage of section 1286 of the Civil Practice Act laches was a defense to mandamus proceedings involving reinstatement to office after the office had been filled by another, it was no defense to an application for the payment of money unlawfully withheld which did not involve any question of reinstatement or any similar circumstances. (*Matter of Ramsay* v. *Lantry*, 123 App. Div. 71; *People ex rel. Jennings* v. *Johnson*, 161 id. 625, 628, 629.) The claim of the present petitioners represents a fixed indebtedness due them for salary incidental to the office which they legally hold. (*Dodge* v. *City of New York*, 252 App. Div. 631.) The city's failure to meet this obligation when it became due may not be obviated by the petitioners' failure to start a proceeding within a reasonable time. The wrong is a continuing one, and a continuing duty rests upon the city until the duty is performed. In *People ex rel. Cropsey* v. *Hylan* (199 App. Div. 218; affd. 232 N. Y. 601) the court said (p. 221): 'Appellants contend at the outset that, even if they had no discretion in the premises, and it was their mandatory duty to provide for these salaries as requested by petitioners, this proceeding was instituted too late in that it was instituted after they were precluded by the express provisions of section 226 from making any increases in the tentative or final budget. I deem it quite clear that it was the mandatory duty of the appellants to provide in the budget for these salaries as fixed by the petitioners, and remains their continuing duty until performed, and that mandamus is the appropriate remedy to compel performance.' The court accordingly holds that the second defense, whether based upon the provisions of section 1286 of the Civil Practice Act or treated as one of laches, is insufficient."

Finally, in *Matter of Powers* v. *La Guardia* (181 Misc. 624, 627, mod. on other grounds 267 App. Div. 807) the court specifically ruled that the four months' Statute of Limitations was not applicable to a situation where there was a continuing mandatory duty involved. The Special Term at page 627 stated: " A contention of like nature was advanced in *Matter of Shevlin* v. *LaGuardia* (166 Misc. 473, 476; mod. on other grounds 254 App. Div. 922; affd. as mod. without opinion 279 N. Y. 649 [*supra*]) and in *Matter of Moses* v. *Board of Education of City of Syracuse* (127 Misc. 477, 483, affd. 218 App. Div. 811, revd. on other grounds 245 N. Y. 106). Such claim was overruled and held untenable for the reason that there is a con-

tinuing duty on the part of the City to pay the salary, fixed by law and that, therefore, the four months' provision within which to institute a mandamus proceeding to compel payment was without application.''

The rationale of these cases is simple and clear. Section 50 of the Code of Criminal Procedure imposes a continuing duty on respondents to pay petitioners $26,000 per year until at least March 31, 1947. Petitioners' rights to compel the performance of this duty accrue from day to day and continue until at least March 31, 1947. The mere fact that a demand was made in May, 1945, does not start the statute running within four months after a refusal. Because of the continuing nature of respondents' obligation, petitioners could again demand the performance of respondents' duty, in July or even November, 1946.

The courts in refusing to apply the four months' statute to a situation like the case at bar have justified their conduct on other grounds. In *Matter of Beggs* v. *Kern* (172 Misc. 556, affd. 258 App. Div. 1049, mod. on other grounds 284 N. Y. 504) the Special Term, in refusing to apply the four months' Statute of Limitations, stated at page 566: '' The incidental objection raised by respondents that petitioners are barred from relief by the four months' statute of limitations (Civ. Prac. Act, § 1286) is without merit. If respondents are right in their contention, the failure of the civil service commission to perform a duty, allegedly acquiesced in by petitioners in failing to make a timely motion, would perpetuate an illegal act. Such limitation proviso cannot rationally be so construed.'' To the same effect see *Herricks Road Corporation* v. *Godfrey* (63 N. Y. S. 2d 447, 449.)

Even if we assume that section 1286 of the Civil Practice Act is applicable to the case at bar, the allegations and affidavits do not establish a refusal to comply with the demand in May of 1945. Under those circumstances, the statute did not toll.

Section 1286 of the Civil Practice Act provides in part, that the action '' must be instituted  *  *  *  within four months  *  *  *  after the respondents' refusal, upon the demand of the petitioner  *  *  *.''

It is conceded that respondents never formally, informally, in writing or orally, advised petitioners that their demand would be refused, or ·that they would not act upon it. ·The mere failure to act does not constitute a refusal within the

meaning of section 1286. If the Legislature intended such conduct to amount to a refusal, it would have said so in no uncertain terms. The statute then, instead of referring to a demand and refusal, would have referred to the board's failure to act after a demand. Under respondents' theory, the statute would commence to run, not from the date of refusal, but four months after demand was made. Petitioners' rights should not be cut off by any such construction.

It must be borne in mind that petitioners' rights to additional compensation accrued under two statutes, the first covering the period from April 1, 1945, to March 31, 1946, and the second from April 1, 1946, to March 31, 1947. Obviously, the demand which was made in May, 1945, could not and did not affect petitioners' rights which only accrued in April of 1946. Clearly, there was no demand made during the latter period until July 29, 1946. The action was commenced in November, 1946, within the four months' period.

Therefore, petitioners would be barred at most from maintaining this proceeding only with respect to additional compensation for the period from April 1, 1945, to March 31, 1946; even as to this period they are not barred for the reasons hereinabove stated.

The four affirmative defenses interposed by the respondents under the admitted facts are insufficient in law.

The petitioners' application is granted, and the respondents are directed: (1) To make provision for inclusion in the budget of the City of New York for the year 1946–1947 and for the tax levy based thereon of a sum or sums sufficient for the payment to petitioners of the arrearages due and to become due them respectively, as set forth in the petition or to direct the payment of said arrearages in the manner provided by law, and (2) to provide for and to pay to each of the petitioners respectively compensation at the rate of $26,000 per year until March 31, 1947.

Settle order.