Samuel H. Hofstadter, J.
I am bound in duty and in respect, to honor the controlling rulings of Matter of Stich v. Wagner (36 Misc 2d 51, affd. 18 A D 2d 454, affd. 14 N Y 2d 530). Hence, I am constrained to reject as legally inadmissible petitioners’ contention that since their rights are derived from State statute, they cannot be limited or impaired by local limitation — that 93c-2.0 of the Administrative Code of the City of New York cannot be applied to any of them under any circumstances. I embrace cordially their view, however, that morally it would be egregiously inequitable to differentiate among them according to whether or not the ritual of protest was observed (see Matter of Goldberg v. Beame, 22 A D 2d 520).
Especially in the context and history of this long controversy, it would seem unbecoming for our city to draw such a distinction. Equality is equity: Gibbons ’ postulate that ‘ ‘ a latitude of equity [is] more suitable to the common sense and feeling of mankind ” was translated by our Court of Appeals into a modern idiom: ‘1 Few formulas are so absolute as not to bend before the blast of extraordinary circumstances ” (Evangelical Lutheran Church v. Sahlem, 254 N. Y. 161, 167).
In the most unique colloquy in recorded history (Genesis 18:25) the apotheosis of Abraham’s moving plea of Deity on behalf of the denizens of Sodom and Gomorrah was: ‘ ‘ Shall not the Judge of the whole earth do justly? ” (I would observe in passing that the so-called “ higher criticism ” of the sacred Testaments, which would impute harshness to the God and heroic figures of the Old Testament, manifests meretricious scholarship— blatant obscurantism, however disguised and however “ advanced ” it purports to be). We may well ask: Shall not the megalopolis of the world do equity to faithful public servants? The city ought to waive the penalty of non-protest. Though the court cannot require it, the City of New York can exercise lenience. Justice is transfigured by benevolence.
*685 The mutual sense of duty in a normal employer-employee relationship is deepened — and heightened — in public employment. The common devotion to the public interest, of governmental entity and servant, establishes ties of “ finest loyalty,” inhibiting any arm’s length attitude. The standard of their behavior towards each other should not be governed by the icy legalism ruling the market place, but ‘ ‘ the punctilio of an honor the most sensitive.” Its imperative is to be not only just but also generous.
To be sure we must be just before we are generous. But these are not mutually exclusive here. No rule inhibits the city from imbuing legal action with generous impulse.
‘1 Payments so made or promised are in one sense gifts, for they are the voluntary assumption of liabilities not theretofore imposed by law. They are not gifts, however, in the sense of the prohibition * * * [of the State Constitution], for their animating purpose is not benefaction, but requittal ” (Cardozo, J. dissenting in People v. Westchester County Nat. Bank, 231 N. Y. 465, 484). If something is still due beyond the letter of the law, State, as well as city, should “not rest till justice has been done. Neither can silence conscience by referring the claimant to the other.” (ibid.)
The call of kindred equities has been answered favorably in the past (Evadan Realty Corp. v. Patterson, 192 Misc. 850, 856, affd. 276 App. Div. 751). The equities of petitioners are not so feeble that their summons should not be heeded. Liability can be assumed when honor commands. Equality among employees rendering the same service is equity — its promptings should be respected “ to set the balance true.”
It is devoutly to be hoped, therefore, that all petitioners will be dealt with alike — those who protested on each occasion and those who did not protest even once.
The failure to protest was the merest technicality which can readily be waived for it was not prejudicial. Acceptance of the lesser salary would not bar relief —at common law. The purpose of 93c-2.0, i.e., that the city could properly order its finances and provide for the contingency of a pay increase, is not operative here. The city was fully cognizant of the State statutes but rejected their application to employees paid by the city; protest or no protest, the need for a contingent fund was irrelevant.
The controversy which gave rise to Stich was whether a State statute applied to State employees paid by the city. The city vigorously argued that it did not. Bight or wrong — or indeed whether any claim existed in his favor — the sophisticated *686 employee routinely indorsed all of Ms checks under protest. The unwary employee, no more knowledgeable than the payroll officials themselves, unwittingly did not. Protest or no protest, the city followed its own erroneous construction of the statutes. If the protests of any of the employees gave notice of contest of this city position, the city had notice on behalf of all similarly situated.
With the filing of the stenographers’ claims, notice that its employees considered this construction erroneous was forcefully brought to the city’s attention. With the institution of Stick, this was reinforced. At this point, the city could certainly have planned for an adverse ruling and provided for the contingency that pay increases would be ordered. It did not do so; presumably because it was not necessary or expedient. It was not misled into not doing so by a failure to protest!
Thus emptied of purpose, reliance on 93c-2.0 exalts form above substance — the unwary employee is trapped and is discriminated against by a shibboleth. In truth, the bar of an accord which 93c-2.0 purports to establish is sheer caprice. It is a fanciful denomination! Juridically speaking, it is a total mutation, if not utter perversion, of the true and traditional concept of an accord and satisfaction. (In this large area of the law Professor Havinghurst has analyzed six types of the executory, alone). There is none like the “ accord and satisfaction ” of 93c-2.0. It is a “ sport ” — an anomaly — “ a category of illusive reference ” to borrow from Prof. Stone in a different context (“ Legal System and Lawyers’ Reasonings ”- Julius Stone — Stanford University Press 1964).
An accord and satisfaction is an agreement between two parties under the terms of which an unresloved account is settled by some stipulated payment (Restatement, Contract, § 417). To establish an accord and satisfaction, the parties must show an intention to discharge the old obligation when the new one has been performed (Wyatt v. New York, Ontario & Western R. R. Co., 45 F. 2d 705). Even then, an amount omitted in error may be recoverd (Port Chester Elec. Constr. Corp. v. Hartsdale Manor Homes, 276 App. Div. 1101; Mance v. Hossington, 205 N. Y. 33; Hett v. Barty Axle Corp., 229 App. Div. 388; Bloomingtons Mm. Co. v. Brooklyn Hygienic Ice Co., 58 App. Div. 66, affd. 171 N. Y. 673; see, also, Susquehanna S. S. Co. v. Andersen & Co., 239 N. Y. 285; CPLR 3005). Moreover, payment of a liquidated and undisputed claim does not constitute basis for claim of an accord in respect of additional amounts in dispute (Pape v. Rudolph Bros., 257 App. Div. 1032, affd. 282 N. Y. 692; Brown v. Bendix Aviation Corp., 76 N. Y. S. 2d 422, affd. *687 274 App. Div. 1049; see, also, Matter of King Metal Prods., v. Workman’s Compensation Bd., 20 A D 2d 565; cf. Evans v. Groves $ Sons Co., 315 F. 2d 335).
In Hudson v. Yonkers Fruit Co. (258 N. Y. 168, 173), Chief Judge Cabdozo said: “ The payment of an admitted liability is not a payment of or a consideration for an alleged accord and satisfaction of another and independent alleged liability.” And in Brown v. Bendix Aviation Corp. (supra), this was applied in a case involving salary checks bearing legends to the effect that they were accepted in full payment of all claims for services rendered. The court said (76 N. Y. S. 2d 422, 423): “ It is well settled that the retention and cashing of a check for an amount admittedly due to the payee does not create an accord and satisfaction operating to release the maker of the check as to other claims asserted against him.” In a lawsuit between private parties involving facts similar to those at bar, acceptance of checks marked as those used by respondents would avail the maker nothing.
Is the city morally or legally more advantaged? Morally, the simple answer is that it should not be. The omission to protest does not affect the justice and equity of petitioners’ claims (Evadan Realty Corp. v. Patterson, 192 Misc. 850, 856, affd. 276 App. Div. 751). In Judge Cabdozo’s phrase, when enforcing a Federal amendment permitting recovery despite lack of portest, of tax payments erroneously made, a “high minded Government renounced an advantage that was felt to be ignoble, and set up a new standard of equity and conscience ” (Moore Ice Cream Co. v. Rose, 289 U. S. 373, 379). The city’s unjust enrichment at the expense of its employees is equally ignoble — in equity and good conscience it should also be renounced.
As discretion is the better part of valor, here renunciation may be the better part of expedience. For, even legally, an infirmity may inhere in the city’s position — a vice which has not yet been probed. In none of the cases — so far as careful research has disclosed — was issue joined with the Fourteenth Amendment as the frame of reference. When employees have been denied recovery for failure to protest under 93c-2.0 (or its predecessors), the bar was held valid under New York decisional law and the State Constitution. But it may be that if challenged in a direct assault under the Federal Constitution it would fail based on the “ due process ” and “ equality ” provisions of the Fourteenth Amendment, which has been so greatly enlarged in breadth and depth, by the recent rulings of the United States Supreme Court.
*688 I have not overlooked Pisciotta v. City of New York (300 N. Y. 664) —it has no relevance or cogency here. In that case application was made for writ of certiorari to the Supreme Court of the United States on the ground that section 93c-2.0 of the Administrative Code was superseded by the Federal Soldiers and Sailors Civil Belief Act and therefore was suspended. The petition for the writ was denied (340 U. S. 825). It is well settled that denial of certiorari has no significance as to a substantive question — a refusal to grant certiorari carries no implication of the court’s view (Harlan, “Manning the Dikes: Some Comments on the Statutory Certiorari, etc.”, 13 The Becord [of the Association of the Bar] 541).
The petitioners’ position is not frivolous, i.e., in an innate sense the “ accord and satisfaction ” of 93c-2.0 is no accord at all and in truth no satisfaction.
Hence it is a deprivation of property without due process to give that provision effect; as well as a denial of equality — vis-a-vis those who followed the hollow ritual of protest. It raises a grave question, indeed, under the Federal Constitution. Our own appellate courts may take a different view than heretofore even under the State Constitution.
But I may not reach these questions. For, in view of the long line of controlling authorities enforcing 93c-2.0 (or its predecessors), it would be improper for nisi prius to reconsider the matter. However, when the question again arises in our higher courts, they may choose to do so. The harsh sanction of the Administrative Code is supported by a very slender reed — it rests on a tenuous predicate — it may collapse when subjected to renewed scrutiny and searching test. And the final disposition would rest with the United States Supreme Court.
Its judicial rhythm has so extended the scope of the Fourteenth Amendment that the wave of its disapproval may encompass the nullification of 93c-2.0. Its coercive inequity is violative of ‘ ‘ fair play ’ ’— it is antithetical to freedom to contract. For without bargaining equality there cannot be freedom of contract — the indispensable basis of binding obligation and corresponding, enforcible right. The cruel penalty exacted by the Administrative Code may well be deemed a violation of “ due process ” and a denial of the equal protection of the law.
“Accord and satisfaction” sounds in contractual principle; it is an incongruity as employed in the provision invoked by the city. “ The legal mind sometimes loses itself in conceptual thinking, and, forgetting the facts that gave birth to a theory, distorts it to apply where the underlying reality is quite different ; sometimes, even contrary to the original frame of refer *689 ence. A seed of an idea set in the evolutionary growth of the law can bear alien fruit. Justice Frankfurter recognized this danger when he wrote [in dissent in Braniff Airways, Inc. v. Nebraska State Board of Equalization and Assessment, 347 U. S. 590, 603 (1954)]: ‘ One of the most treacherous tendencies in legal reasoning is the transfer of doctrines which are, in effect, generalizations developed for one set of situations to seemingly analogous yet essentially very different situations.’ ” (“ No Glory, No Beauty, No Stars — Just Mud ” — by Samuel H. Hofstadter and Shirley R. Levittan [N. Y. State Bar Journal, - April, 1965, pp. 116,123]).
As in judicial legislation, so too, in statutory enactment, a meaningful formulation in one context is incongruous when introduced in another. The importation is not a happy transplantation. Accord and satisfaction is indigenous to contract law— its roots are in the soil of consensual accommodation. The sheer ipse dixit of a monolithic master ill comports with the primary premise of agreement. The unilateral determination of 93c-2.0 is an intrusion in the area of accord and satisfaction — the alien may be expelled when challenged.
The laborer is worthy of his hire. Denial of just compensation by fiat is an amoral deprivation; it may be held to be an illegal one as well!
In any event, I am not constrained on the issue whether protest registered by any petitioner for any payroll period after April 30, 1961, was sufficient to place the city on notice and thus preserve the rights of that petitioner for all periods following such protest without repetition thereof. I have found no ruling to the contrary. And I so hold.
Because of its very terms which are discriminatory in effect, subdivision b of section 93c-2.0 must be so strictly construed as to prevent impairment of Fourteenth Amendment rights — to prevent palpable injustice. Literal meanings of words are not “ to be adhered to or suffered to defeat the general purpose and manifest policy to be promoted” (Matter of Capone v. Weaver, 6 N Y 2d 307, 309). When that purpose has been promoted undue expansion of the literal words would be grotesque, inconsistent with due process and violative of constitutionally protected substantive rights. Indeed, “ if literalness is sheer absurdity, we are to seek some other meaning whereby reason will be instilled and absurdity avoided ” (Outlet Embrodiery Co. v. Derwent Mills, 254 N. Y. 179, 183).
The State statutes were continuous in effect. Protest by an employee during either period implied that the benefits of the statutes had not been granted the protesting petitioner. *690 With the making of such protest, the essential purpose of the requirement of the Administrative Code had been fulfilled — the law required no other notice. “ True, indeed, it is that a payment tendered in settlement of a disputed or unliquidated claim must be accepted upon the terms accompanying the tender, or rejected altogether * * # This does not mean that the significance of the tender is unaffected by what goes before and after.” (Gaston & Co. v. Storch, 253 N. Y. 68, 71).
As Judge Van Voorhis said for a unanimous court in Tibbets Contr. Corp. v. O & E Contr. Co. (15 N Y 2d 324, 337): “ Language in contracts placing one party at the mercy of the other is not favored by the courts * * * literal absolutism * * * at the categorical dictation of the other party, is not supported by the decisions (Sanford v. Brown Bros. Co., 208 N. Y. 90; Gillet v. Bank of America, 160 N. Y. 549; Wilson & English Constr. Co., v. New York Cent. R. R., Co., 240 App. Div. 479).” And this was said in a context of true contract.
‘ ‘ Equity is not crippled * * * by an inexorable formula ” (Marr v. Tumulty, 256 N. Y. 15, 21) the highest court of the State said long ago. Speaking for a majority, our Chief Judge said recently in the reapportionment case (Matter of Orans, 15 N Y 2d 339, 349): “ Therefore, we should consider it our duty to save it as a clearly separate and severable item. * * * ‘ Our right to destroy is bounded by the limits of necessity. Our duty is to save unless in saving we pervert. ’ That striking language of Judge Cardozo’s Alpha Cement opinion is surely no less applicable to a Constitution than to a simple statute.”
Or to a code, I would presume to add. It is incumbent upon the court to the utmost of its competency, so to read the code as to conserve its reason and not pervert its intent — to the end that equity may be done. A holding that a protest once registered is sufficient under 93c-2.0, achieves this end.
Matter of Powers v. La Guardia does not militate against this holding; in the present context it is not relevant nor cogent. There, not even a purported compliance with 93c-2.0 had been undertaken; and the sole question agitated was whether the institution of an action was the equivalent of “ protest.” The Special Term held that it was (181 Misc. 624); this view was rejected by the Appellate Division (267 App. Div. 807, affd. 292 N. Y. 695). The appellate courts held no more than that if no protest had been made, the institution of an action would not suffice. I am not constrained, therefore, from holding here that if in fact a protest was registered it would satisfy the *691 requirements of the Administrative Code — without the need of repetition.
Obviously I may not accept petitioners’ contention that even in default of any protest, after the Stich action none was required. Powers has ruled, directly and authoritatively, otherwise. But those who did protest even once as provided for by 93c-2.0 are entitled to recover their full salaries for periods subsequent. While the institution of action alone would not avail, an actual protest does.
With respevu oo the limitations set forth in the Letter-Schedule of the Presiding Justices under date of April 8, 1964: I reject the respondents’ contention that it is retroactive in effect; and I reject, too, that of the petitioners that it should be disregarded altogether. That communication of the Presiding Justices expressed the unanimous determination of the Appellate Divisions of the First and Second Departments to withhold from each of the individuals listed in an attached schedule “ so much of the aggregate of the increases in salary pursuant to the two afore-mentioned statutes as would result in greater remuneration than the amount specified in said schedule as the maximum salary payable to the particular individual
The determination was made by the Justices as “ the appropriate appointing authorities ” pursuant to section 3 of chapter 492 of the Laws of 1961 and section 3 of chapter 640 of the Laws of 1962: 11 that any increase in compensation provided for by this act may be withheld in whole or in part from any ofScer or employee who, in the opinion of the appropriate appointing authority, does not warrant such increase.”
Clearly, it speaks prospectively. Chapter 492 of the Laws of 1961 adjusted salaries beginning May 4, 1961; and chapter 640 of the Laws of 1962 readjusted these salaries beginning with the payroll period nearest to August 1, 1962. New article VT of the State Constitution did not take effect until September 1, 1962; nor did section 214 of the Judiciary Law (L. 1962, ch. 684). Neither the constitutional amendment nor new article 7-A of the Judiciary Law is retroactive; as of May 4, 1961 and August 1, 1962, neither the Administrative Board nor the Appellate Divisions had as yet been vested with the authority to fix salaries under these new enactments (Matter of Dreher v. Wagner, 38 Misc 2d 290, affd. 20 A D 2d 751, revd. on other grounds 14 N Y 2d 926; Matter of Aliveis v. Wagner, 20 A D 2d 274, 848, revd. on other grounds 14 N Y 2d 923).
The Appellate Divisions in fact did not undertake to exercise the authority granted appointing authorities by sections 3 *692 preceding the city’s fiscal years 1961-1962 or 1962-1963 or 1963-1964. Indeed for 1963-1964 it ‘ ‘ was the intention of the Administrative Board that if the Court of Appeals should decide the pending litigation [Stich] adversely to the City # * * after recomputation of salaries by applying the State increases according to the statutory plan, the employees would be paid the higher of the two amounts ”. (Affidavits of Presiding Justices Boteih and Beldóck of July 1, 1964.) Thus, the Appellate Divisions elected not to withhold any part of the salary of any petitioner, until April 8, 1964.
In this light, the letter of April 8, 1964 must be read to apply to the city’s fiscal year 196A-1965. It does not govern salaries due for any earlier fiscal year. It does not purport to do so; and must be deemed — by its own terms as well as on the whole record of preceding events — to speak prospectively as of the time of its utterance. And I reject, therefore, as utterly untenable the respondents’ contention that it operates retroactively.
Equally inadmissible is petitioners’ suggestion that it can be ignored altogether as beyond the scope of its signatories’ authority. I may not yield to their view that under section 3 (of chapter 492 of the Laws of 1961 and of chapter 640 of the Laws of 1962), the appointing authorities could withhold increases for cause only. (No claim of cause is asserted by respondents.) The unanimous Appellate Divisions interpreted the clause “ does not warrant such increase ”, to authorize and include the ceilings in the schedule for the fiscal year 1964-1965. And this formulation bears the imprimatur of high presumptive validity by virtue of its authorship. Not only an innate sense of judicial decorum but also a limitation in competence forbids my holding otherwise — to undertake to resolve it collaterally would be subversive of orderly procedure.
Subsidiary differences in the orders submitted remain for disposition. The court adopts respondents’ formula for calculating the increases based on the number of days elapsed as numerator and 365 days as the denominator. As so modified, paragraphs numbered (1) to (5) of petitioners’ proposed order are adopted, except as follows:
At the end of paragraph (1), following the date April 30, 1961, there shall be added the words “without the aforesaid adjustment ”:
At the end of paragraph (2), following the date July 1, 1961, there shall be added the words “ before adjustment ”; and
In paragraphs (3) and (5), before the matter in parenthesis, there shall be added the words ‘ ‘ before adjustment ’ ’.
*693 In paragraph (6) first subdivision (2) of petitioners’ order, the words “ earning his annual salary effective ” shall be eliminated and the words “in such position” substituted; in first subdivision (b) the words “ before adjustment ” shall be added following the word ‘ ‘ effective ’ ’. The same corrections shall be made in the second subdivision (a) and (b) of paragraph (6). As so modified, petitioners’ paragraph (6) is adopted.
Petitioners’ application for the appointment of a Special Referee is denied without prejudice to an application, at the foot of the order, for the appointment of a Referee should respondents fail to compute or pay the increases mandated within 30 days after the time to appeal from such order has expired if no appeal is taken from such order by either side, or within 30 days following the final disposition of any such appeals.
The parties are granted leave to appeal. The Comptroller may audit the payments to be made, consistently with the provisions of the order.
Settle new order. It is hoped that the parties will collaborate to agree on the terms of the new proposed order so that no emendations by the court will be necessary. In such collaboration, the parties are deemed not to waive the respective contentions which they have urged, and such collaboration is, of course, without prejudice. It will be extremely helpful to the court if they agree on the language of the new proposed order to carry out the conclusions reached by the court as set forth in this and the prior opinion.